**John PRIORE, Petitioner-Appellant,**

v.

**W. Raymond NELSON, Warden, Federal Correctional Institution, Danbury, Connecticut, and Cecil McCall, Chairman, U. S. Parole Commission, Respondents-Appellees.**

No. 149, Docket 79–2073.

United States Court of Appeals,
Second Circuit.

Submitted Sept. 14, 1979.

Decided June 11, 1980.

---

2. Appellant was in fact acquitted of firing at the Drug Enforcement Agent.

Kenneth N. Flaxman, Chicago, Ill., for petitioner-appellant.

Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn. (Richard Blumenthal, U. S. Atty. for the Dist. of Conn., George C. Jepson, Law Student Intern, New Haven, Conn., on brief, of counsel), for respondents-appellees.

Before LUMBARD, MANSFIELD and GURFEIN,* Circuit Judges.

MANSFIELD, Circuit Judge:

John Priore, an adult federal prisoner serving a sentence upon his conviction of embezzlement of union funds in violation of 18 U.S.C. § 1962(a), appeals from an order of the District Court for the District of Connecticut entered on April 12, 1978, by Judge T. F. Gilroy Daly, denying his petition for a writ of habeas corpus seeking his release from confinement on the grounds that the parole release guidelines of the United States Parole Commission promulgated pursuant to the Parole Commission and Reorganization Act (PCRA), 18 U.S.C. § 4203(a)[1] (1) are inconsistent with congressional intent in enacting the PCRA, (2) im-

---

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Lumbard and Mansfield, who are in agreement on this opinion. Judge Gurfein unfortunately died on December 16, 1979. Prior to his death, he did not have the opportunity, however, to see this opinion.

1. Section 4203(a)(1) reads:

"§ 4203. *Powers and duties of the Commission*

"(a) The Commission shall meet at least quarterly, and by majority vote shall—

(1) promulgate rules and regulations establishing guidelines for the powers enumerated in subsection (b) of this section and such other rules and regulations as are necessary to carry out a national parole policy and the purposes of this chapter; . . . .."

pinge upon both the traditional sentencing prerogatives of the judiciary and the legislative functions of Congress, and (3) violate the double jeopardy and ex post facto prohibitions of the Fifth Amendment. We affirm.

On February 2, 1978, Priore, head of Local 690 of the Amalgamated Workers Union of America, pleaded guilty in the District Court for the Eastern District of New York to one count of an indictment charging him with embezzlement of union funds in violation of 18 U.S.C. § 1962(a). He was sentenced to a term of five years imprisonment and fined $25,000. The sentence did not contain any provision for early parole eligibility, see 18 U.S.C. § 4205(b).

Appellant commenced serving his sentence in March 1978. In June 1978, pursuant to 28 C.F.R. § 2.12, which accords each prisoner a parole release hearing within 120 days after the beginning of his confinement, a hearing was held and parole release was denied by the Commission. A Commissioner of Parole, applying guidelines that had been promulgated by the United States Parole Commission, found that appellant's anticipated period of incarceration would be 48 to 60 months. The reasons for the decision were set forth in a hearing summary dated June 29, 1978 and communicated to Priore in a "Notice of Action," dated July 3, 1978. The latter advised that release had been denied because appellant's "offense behavior has been rated as very high severity because the overall offense involved the use of extortion as means and embezzlement of union funds." Upon administrative appeal the decision was affirmed by the Regional Commission on August 15, 1978, and by the National Appeals Board on January 4, 1979.

In March 1979 Priore, then incarcerated at the Federal Correctional Institution at Danbury, filed a petition in the District Court for the District of Connecticut seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the ground that the parole release guidelines, pursuant to which the Commission acted, were unlawful. On April 11, 1979, Judge Daly denied his peti-

tion, finding that the guidelines had been properly promulgated pursuant to statutory authority, that they did not conflict with the judicial sentencing prerogative, that they did not violate the double jeopardy and ex post facto provisions of the Constitution, and that the Commission had not violated 18 U.S.C. § 4206(d), discussed *infra*, which requires release of a prisoner after he has served two-thirds of a five-year sentence (i. e., 40 months), subject to certain conditions. From this decision Priore appeals.

## DISCUSSION

The Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218, which was enacted by Congress in 1976, created the United States Parole Commission, an independent federal agency vested with power to grant and deny the parole of any eligible federal prisoner, subject to certain mandatory limits in the case of prisoners sentenced to terms of five years or more. The Commission is directed to "promulgate rules and regulations establishing guidelines" with respect to exercise of its discretionary power to release federal prisoners on parole, 18 U.S.C. § 4203(a), and "such other rules and regulations as are necessary to carry out a national parole policy." The statutory criteria governing the Commission in its formulation of guidelines are prescribed by 18 U.S.C. § 4206(a), which provides:

"(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released."

The Commission is empowered to apply the guidelines in parole release decisions, 18 U.S.C. § 4203(b), and to grant or deny parole in spite of the guidelines "if it determines there is good cause for so doing," 18 U.S.C. § 4206(c).[2]

The principal purpose and intent of the Act was described in the House Conference Report, a joint explanatory statement of conferees made to both the House and the Senate. H.R.Rep. No. 94–838, 94th Cong., 1st Sess., reprinted in 1976 U.S.Code Cong. & Admin.News, pp. 335, 351. The Report notes that, although parole originated as a form of clemency designed to partially mitigate an unusually harsh sentence or to reward exemplary institutional behavior, it had now taken on the broader goal of determining "precisely how much time an offender must serve [in most cases where sentences had been imposed by the court]." This requires the Commission to weigh complex factors, including the "practical effect of balancing differences in sentencing policies and practices" between judges and courts in a far-flung federal criminal justice system, a task which requires the parole authority "to have in mind some notion of the appropriate range of time for an offense which will satisfy the legitimate needs of society to hold the offender accountable for his own acts," H.R.Rep. No. 94–838, *supra* at 19–20, 1976 U.S.Code Cong. & Admin.News, *supra* at 351–52.

In discussing § 4206(a) the Conference Report made the following relevant statement:

"It is the intent of the Conferees that the Parole Commission, in making each parole determination, shall recognize and make a determination as to the relative severity of the prospective parolee's offense and that in so doing shall be cognizant of the public perception of and respect for the law. It is the view of the Conferees that the U.S. Parole Commission is joined in purpose by the Courts, the Congress and the other Executive agencies in a continuing effort to instill respect for the law. The Parole Commission efforts in this regard are fundamental and shall be manifested by parole determinations which result in the release on parole of only those who meet the criteria of this act.

"Determinations of just punishment are part of the parole process, and these determinations cannot be easily made because they require an even-handed sense of justice. There is no body of competent empirical knowledge upon which parole decision-makers can rely, yet it is important for the parole process to achieve an aura of fairness by basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances. The parole decision-makers must weigh the concepts of general and special deterrence, retribution and punishment, all of which are matters of judgment, and come up with determinations of what is meant by 'would not depreciate the seriousness of his offense or promote disrespect for the law' that, to the extent possible, are not inconsistent with the findings in other parole decisions.

"The phrase 'release would not depreciate the seriousness of his offense or promote disrespect for the law' involves two separate criterion and there may be situations in which one criterion is met but the other remains unsatisfied. For example, if a public official was convicted of fraud which involved a violation of the public trust and was sentenced to three years imprisonment, his release on parole after one year might satisfy and depreciate the seriousness criterion but the Commission could justify denying release on the grounds that such release 'would promote disrespect for the law.'

---

2. Section 4206(c) reads:

"(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided*, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon."

"The use of the phrase 'release would not jeopardize the public welfare,' is intended by the Conferees to recognize the incapacitative aspect of the use of imprisonment which has the effect of denying the opportunity for future criminality, at least for a time. It is the view of the Conferees that the Parole Commission must make judgments as to the probability that any offender would commit a new offense based upon considerations which include comparisons of the offender with other offenders who have similar backgrounds. The use of predictive devices is at best an inexact science, and caution should be utilized. Such items as prior criminal records, employment history and stability of living patterns have demonstrated their usefulness in making determinations of probability over a substantial period of time. These are not written into the statute, however, as it is the intent of the Conferees to encourage the newly created Parole Commission to continue to refine both the criteria which are used and the means for obtaining the information used therein.

"Further, this section provides that Parole Commission guidelines shall provide a fundamental gauge by which parole determinations are made.

"It is the intent of the Conferees that the guidelines serve as a national parole policy which seeks to achieve both equity between individual cases and a uniform measure of justice. The Parole Commission shall actively seek the counsel and comment of the corrections and criminal justice communications prior to promulgation of guidelines and shall be cognizant of past criticism of parole decision making." H.R.Rep. No. 94–838, *supra* at 25–27, 1976 U.S.Cong. & Admin.News, *supra*, at 358–59.

Pursuant to the authority vested in it by Congress the Commission promulgated parole release guidelines, 28 C.F.R. § 2.20, in order "to establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration." The guide-lines indicate the customary range of time to be served by the prisoner based upon the severity of his offense and his characteristics. Specifically, the Commission assigns a "severity level" to the offense of which the prisoner was convicted and a "salient factor score" derived from the prisoner's individual characteristics, including the prisoner's offense and other behavior, the combination of which results in the customary range of time to be served. The guidelines are "established specifically for cases with good institutional adjustment and program progress," and the Commission may revise and modify the guidelines, including the salient factor score, at any time. The regulation further states:

"(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.

"(d) The guidelines contain examples of offense behaviors for each severity level. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

"(e) An evaluation sheet containing a 'salient factor score' serves as an aid in determining the parole prognosis (potential risk of parole violation). However, where circumstances warrant, clinical evaluation of risk may override this predictive aid." 28 C.F.R. § 2.20.

Title 18 U.S.C. § 4206(d) provides that a prisoner serving a sentence of five years or longer must be paroled after having served two-thirds of his term unless the Commission determines that he has seriously violated institution rules and regulations, or that there is a reasonable probability that he will, if released, commit a crime.

█ Priore contends that the guidelines violate the Act because they concentrate almost entirely upon the severity of the offense of which a prisoner has been convicted, without regard to either the length and type of the sentence actually imposed upon him by the court, the nature and

circumstances surrounding the commission of the offense by the prisoner or the prisoner's history and characteristics. The effect, he argues, is contrary to congressional intent and permits an unlawful resentencing by the Commission. We disagree.

The guidelines fall well within the broad authority granted by Congress in 18 U.S.C. § 4203(a)(1) to the Commission. The Commission's establishment of a system for estimating customary release dates, moreover, is rational and in accordance with both the criteria set forth in 18 U.S.C. § 4206(a) and the intent of Congress as expressed in the foregoing quoted portion of House Conference Report No. 94–838, *supra.* See, in accord, *Moore v. Nelson,* 611 F.2d 434, 439 (2d Cir. 1979); *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977); *Dioguardi v. United States,* 587 F.2d 572, 575 (2d Cir. 1978); *Ruip v. United States,* 555 F.2d 1331 (6th Cir. 1977); *Vanacore v. United States,* 440 F.Supp. 442 (E.D.N.Y.1977); *Richards v. Crawford,* 437 F.Supp. 453 (D.Conn.1977); *Dubois v. Wilkinson,* Civ.No. B–77–129 (D.Conn. April 22, 1977), *affd. without opinion,* 573 F.2d 1289.[3] Although the guidelines on their face appear to be mechanical computations, the Regulation establishing them, 28 C.F.R. § 2.20, states that they are "merely guidelines" or non-binding "examples," from which the Commission is free to depart after taking into consideration "mitigating or aggravating circumstances in a particular case," and that they have been established for cases "with good institutional adjustment and program process." Moreover, 28 C.F.R. § 2.19 mandates the Commission, in making a parole release determination, to consider, to the extent relevant and available, (1) reports and recommendations by the staff of the facility in which the prisoner is confined, (2) his prior criminal record, including earlier probation and parole reports, (3) all presentence inves-

tigation reports, (4) parole recommendations made at the time of sentence by the sentencing judge and prosecuting attorney, (5) reports on physical, mental and psychiatric examinations, and (6) any other information concerning the prisoner, including submissions by himself and other interested persons.

The flexibility of the guidelines is demonstrated by the Commission's report and recommendation in this case, which reveals that it acted only after thorough consideration of the particulars of the offense committed by Priore, the sentence imposed by the sentencing judge, Priore's prior record, his social history, his institutional adjustment and his plans if released. Although Priore had a clear institutional record and no history of drug or alcohol abuse, he also had five (5) prior convictions which resulted in three prior periods of incarceration. The circumstances of his crime hardly supported release, since they involved use of extortion over a long period of time to solicit illegal "commissions" estimated at more than $1 million. In this context it is not surprising that the Commission, based on an individualized review of his case, including the sentence imposed on him by the court, found "no justification for a decision below the guidelines at this time."

The present case, therefore, is but one more example of the principle that mere eligibility for parole does not entitle the prisoner to parole. The record here amply demonstrates that Priore's case was given full, careful and thorough consideration by the Commission and that the Commission was justified in declining to depart from its guidelines. Nor does the record indicate that the guidelines were inflexible or improperly applied. In response to Priore's heavy reliance upon *Geraghty v. United States Parole Commission,* 579 F.2d 238

---

**3.** Many of these cases involved the issue of whether the guidelines may be applied to a "(b)(2)" federal prisoner sentenced under 18 U.S.C. § 4205(b)(2), which makes the prisoner eligible for parole at any time, rather than to an adult like Priore sentenced under 18 U.S.C. § 4206(a), who becomes eligible for parole only after service of one-third of his sentence. But their conclusion that there is no inconsistency between the guidelines and congressional intent and no usurpation of legislative or judicial roles with respect to *indeterminate* sentences applies with even greater force when the sentencing judge imposes the regular adult sentence, which is ordinarily intended to be more restrictive than the "(b)(2)" sentence.

(3d Cir. 1978), vacated and remanded by the Supreme Court on other grounds, *sub nom.,* *United States Parole Commission, et al. v. Geraghty,* 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1980), we can only repeat the views expressed by us recently in *Moore v. Nelson,* 611 F.2d 434, 439 (2d Cir. 1979):

"We have considered the Third Circuit's extensive critique of the parole guidelines in *Geraghty v. United States Parole Commission,* 579 F.2d 238 (3d Cir. 1978), *cert. granted,* 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979), and respectfully disagree with the views there expressed as to both statutory issues and constitutional overtones. Whatever differences in viewpoint may have been expressed as the initial versions of the PCRA moved through the House and Senate, *id.* at 256–59, we are satisfied that the enacted version permits the Commission to apply its guidelines to (b)(2) prisoners and precludes the courts from attempting to restructure the manner in which the Commission exercises its discretion in individual cases. Moreover, we find no intrusion by the Commission upon legislative or judicial prerogatives." 611 F.2d at 439.[4]

Priore's contentions that as applied in his case the Commission's guidelines subject him to double jeopardy and have an ex post facto effect must also be rejected. The Double Jeopardy Clause applies to judicial proceedings, not parole. See *Roach v. Board of Pardons,* 503 F.2d 1367, 1368 (8th Cir. 1974); *Nunley v. U. S. Board of Paroles,* 439 F.Supp. 887 (W.D.Okl.1977); *Daigle v. Hall,* 387 F.Supp. 652, 661–62 (D.Mass.1975); *Carlisle v. Bensinger,* 355 F.Supp. 1359, 1362 (N.D.Ill.1973). Nor does the ex post facto clause of the Constitution apply in the present case since Priore was sentenced after the guidelines had been promulgated and presumably the sentencing court "was well aware of the standardized nature of the guidelines at the time of sentencing," *Vanacore v. United States, su-*

*pra,* 440 F.Supp. at 443. In any event we rejected the application of the ex post facto clause to the guidelines in *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977), noting that they "merely clarify the exercise of administrative discretion without altering any existing considerations for parole release." See, in accord, *Ruip v. United States, supra,* 555 F.2d 1331; *Richards v. Crawford, supra,* 437 F.Supp. 453.

Finally Priore's contention that the estimated minimum release time (48 months) stated by the Commission in its Notice of Action issued July 3, 1978, violates his rights under 18 U.S.C. § 4206(d) must be rejected as premature. It is true that § 4206(d) guarantees him release after 40 months of incarceration, provided the Commission may deny release if it finds he has "seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." However, the Commission's interim action was tentative and subject to redetermination. Assuming that he has a clear institutional record at the end of 40 months' incarceration and there is no reasonable probability that he will commit a crime upon release, the Commission should release him; if not, he will be entitled to seek a prompt hearing under 28 C.F.R. § 2.53 and such judicial relief as may be necessary and appropriate.

The order of the district court is affirmed.

---

4. It does not appear that the Third Circuit has completed proceedings upon remand of *Ger-*    *aghty* to it by the Supreme Court.