**GERAGHTY, John M., individually and on behalf of a class, Villanti, Frank and Ford, Nicola, Additional Plaintiffs,**

v.

**UNITED STATES PAROLE COMMISSION and Attorney General of United States and Superintendent, Federal Prison Camp, Montgomery, Pa.**

**Appeal of John M. GERAGHTY.**

**No. 82–3593.**

United States Court of Appeals, Third Circuit.

Argued Aug. 11, 1983.

Decided Oct. 6, 1983.

Rehearing Denied Oct. 28, 1983.

Certiorari Denied March 19, 1984. See 104 S.Ct. 1602.

Chase, Md., for appellees; Joseph A. Barry, General Counsel, U.S. Parole Com'n, Michael A. Stover, Atty., U.S. Parole Com'n, Washington, D.C., of counsel.

Before ALDISERT and WEIS, Circuit Judges, and RE, Chief Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal presents three questions: whether the district court properly made certain class certification decisions; whether the federal parole guidelines violate the Parole Commission and Reorganization Act of 1976 (PCRA); and if not, whether construing the PCRA to authorize the guidelines renders the statute unconstitutional. The district court, following a remand from the United States Supreme Court, certified a plaintiff class consisting of federal prisoners in the Middle District of Pennsylvania, and, after a bench trial, held both that the guidelines were valid under the PCRA and that interpreting the PCRA to authorize the guidelines did not offend the Constitution. Geraghty, for himself and the class, appeals both the district court's class action determination and its decision on the merits. We affirm.

### I.

On September 15, 1976, plaintiff John M. Geraghty, a federal prisoner, initiated this class action in the United States District Court for the District of Columbia seeking declaratory and injunctive relief[1] after his requests for release on parole had been twice denied.[2] He challenged the legality of the federal parole guidelines, both on

Kenneth N. Flaxman (argued), Chicago, Ill., for appellant.

David Dart Queen, U.S. Atty., Harrisburg, Pa., Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., Patrick J. Glynn (argued), Atty., U.S. Parole Com'n, Chevy

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. Geraghty was serving a 30-month sentence for conspiracy to commit extortion and making false material declarations to a grand jury. When he was originally sentenced, he was given concurrent prison terms of four years on the conspiracy count and one year on the false declarations count. The sentencing court later commuted his sentence to 30 months pursuant to Rule 35, F.R.Crim.P. *United States v.*

*Braasch,* No. 72–979 (N.D.Ill. Oct. 9, 1975), *appeal dismissed and petition for mandamus denied,* 542 F.2d 442 (7th Cir.1976). In reducing his sentence, the court reasoned that the application of the parole guidelines would cause Geraghty to be imprisoned substantially longer than it originally intended.

2. After four months in custody, Geraghty applied for release on parole. His first application was denied with the following explanation:

Your offense has been rated as very high severity. You have a [parole prognosis]

their face and as applied, and the constitutionality of the PCRA. The district court construed the case as one sounding in habeas corpus and transferred it to the Middle District of Pennsylvania, the situs of Geraghty's incarceration. The transferee district court agreed that it was a habeas corpus proceeding, denied class certification, and granted summary judgment in favor of the defendants both as to the legality of the parole guidelines and the constitutionality of the statute under which they had been promulgated. *Geraghty v. United States Parole Commission,* 429 F.Supp. 737 (M.D.Pa.1977). Geraghty appealed, but before disposition, his sentence expired and he was released.

We subsequently reversed and remanded, *Geraghty v. United States Parole Commission,* 579 F.2d 238 (3d Cir.1978), holding: (1) the case should have been construed as an action for declaratory judgment rather than habeas corpus; (2) Geraghty's release did not render the appeal moot; and (3) the district court erred in failing to consider *sua sponte* the possibility of creating subclasses when it denied class certification. Then, to avoid "improvidently dissipat[ing] judicial effort," *id.* at 254, we went on to address the merits of Geraghty's substantive claims for the limited purpose of determining whether a trial should be had. We concluded that it should, stating:

> If Geraghty's recapitulation of the function and genesis of the guidelines is supported by the evidence, there are important divergents between the Parole Commission's actions and the intent of Congress in enacting the statutory mandate.

*Id.* at 259.

The Commission petitioned the Supreme Court for certiorari, which was granted.

*United States Parole Commission v. Geraghty,* 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979). The Court then vacated our decision and remanded the case for further proceedings. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). It agreed that Geraghty's release from custody had not mooted the case, but rejected our suggestion that the district court should have considered *sua sponte* the possibility of creating subclasses when it denied class certification. It ruled that the burden of constructing subclasses should be on Geraghty rather than the district court. Finally, the Court declined to address the merits, stating:

> although the Court of Appeals commented upon the merits for the sole purpose of avoiding waste of judicial resources, it did not reach a final conclusion on the validity of the guidelines. Rather, it held only that summary judgment was improper and remanded for further factual development. Given the interlocutory posture of the case before us, we must defer decision on the merits of respondent's case until after it is determined affirmatively that a class properly can be certified.

*Id.* at 408, 100 S.Ct. at 1215.

On remand, rather than certify the nationwide class suggested by Geraghty, the district court allowed the case to proceed as a class action consisting only of federal prisoners confined in the Middle District of Pennsylvania who are, or will become, eligible for parole release under 18 U.S.C. § 4205(a)[3] and who have been, or will be, denied parole and continued to the expira-

---

score of 11. You have been in custody for a total of 4 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of 26–36 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that a decision at this consideration outside the guidelines does not appear warranted. Geraghty reapplied for parole several months later, and again, his application was denied for

the same reason. Thus, as the guidelines were applied, Geraghty was required to stay in prison, unparoled, until the expiration of his sentence, minus good-time credits.

**3.** Section 4205(a) provides:

> (a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or

tion of their sentences. It limited the case to a consideration of two issues advanced by Geraghty: the legality of the parole guidelines under the PCRA and the facial constitutionality of the statute. *Geraghty v. United States Parole Commission,* No. 76–1467 (M.D.Pa. Dec. 10, 1980), *reprinted in* app. at 27. In so doing, it refused to consider whether the Commission's failure to distinguish between 18 U.S.C. §§ 4205(a) and 4205(b)[4] offenses was permissible, whether the parole guidelines were unlawful as applied, and whether applying the parole guidelines retroactively constitutes a violation of the *ex post facto* clause of the Constitution (an issue since addressed by this court in *United States ex rel. Forman v. McCall,* 709 F.2d 852 (3d Cir.1983)). After a bench trial, the district court again upheld both the legality of the parole guidelines under the PCRA and the constitutionality of the statute. *Geraghty v. United States Parole Commission,* 552 F.Supp. 276 (M.D.Pa.1982). Geraghty again appeals, contending that both the district court's class action determination and its decision on the merits were erroneous.

## II.

Geraghty attacks the district court's class action determinations on three grounds, arguing that the court erred in: (1) certifying a class limited to prisoners confined in the Middle District of Pennsylvania; (2) refusing to certify the class on the question of the propriety of applying the same guidelines both to prisoners sentenced under 18 U.S.C. § 4205(a) and to those sentenced under 18 U.S.C. § 4205(b); and (3) refusing to certify the class on the question of the legality of parole guidelines as applied. Going to the merits, appellant's primary contention is that the parole guidelines offend the PCRA because they do not specifically require the Commission to consider either the prisoner's rehabilitation and institutional behavior or the length of his sentence. Presuming the guidelines are adjudged to be valid, however, he argues that such a construction of the PCRA renders it unconstitutional as an impermissible infringement of judicial and legislative functions. Although we will consider these arguments *seriatim,* a short description of the PCRA and the guidelines will place the contentions in proper perspective.

## III.

### A.

In 1976, Congress enacted the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218. The statute created the United States Parole Commission as successor to the United States Board of Parole, 18 U.S.C. § 4202, and empowered it to make parole release decisions for eligible federal prisoners, 18 U.S.C. § 4203(b). The PCRA also made it the Commission's responsibility to promulgate guidelines to govern the exercise of that power. 18 U.S.C. § 4203(a)(1).

In making a parole release decision under the statute, the Commission first must find that the prisoner is eligible for release. Eligibility is controlled by the nature of the sentence imposed by the sentencing judge. If the sentencing judge imposes a definite term sentence, according to 18 U.S.C. § 4205(a), the prisoner is usually ineligible for release on parole until after he has served one-third of his sentence. If the sentencing judge fixes a minimum term of incarceration, 18 U.S.C. § 4205(b)(1) gov-

---

of a sentence of over thirty years, except to the extent otherwise provided by law.

**4.** Section 4205(b) provides:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

erns, and the prisoner becomes eligible for parole at the expiration of that term. But if the judge fixes a maximum sentence to be served, he may grant the Commission carte blanche authority to release the prisoner at any time under 18 U.S.C. § 4205(b)(2).

Presuming the prisoner is eligible for parole release, the PCRA directs the Commission to determine whether that release should be granted. Specifically, 18 U.S.C. § 4206(a) dictates that a prisoner is to be released pursuant to the Commission's guidelines, if

[he] has substantially observed the rules of the institution ... to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare.

Only for good cause may the Commission depart from the guidelines in granting or denying a prisoner release on parole. 18 U.S.C. § 4206(c).

In making its many parole release determinations, the Commission must consider, if available and relevant:

(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) presentence investigation reports;

(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and

(5) reports of physical, mental, or psychiatric examination of the offender.

18 U.S.C. § 4207. All additional relevant information concerning the prisoner that is reasonably available must also be considered. *Id.*

B.

"To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration," 28 C.F.R. § 2.20(a) (1981), the Commission promulgated guidelines for making parole release determinations pursuant to 18 U.S.C. § 4203(a)(1). *See* Amendment to Paroling Policy Guidelines, 47 Fed.Reg. 56,336 (1982) (to be codified at 28 C.F.R. § 2.20). The guidelines were substantively similar to the ones that channeled the discretion of the Board of Parole before the enactment of the PCRA. Embodied in these guidelines is a formula that enables the Commission to compute the "customary total time" an eligible federal prisoner must serve before being released on parole. To make this computation, the Commission first must determine the severity of the prisoner's offense—a determination that is made without regard to the maximum-minimum offense penalties set by Congress or sentence length. The Commission then must assess the likelihood that the prisoner will succeed on parole—an assessment that is not based on a prisoner's rehabilitative progress, but on the number of prior convictions, number of prior commitments, age at current offense, length of recent commitment free period, current probation or parole status, and history of heroin or opiate dependence. Although prisoners are ordinarily released or detained in accordance with these guidelines, "[w]here the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c) (1981).

IV.

■ Reaching Geraghty's contentions, we first must decide whether the district court erred in its class action determinations. We must uphold those determinations absent proof of abuse of discretion. *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 822 (3d Cir.1982). We find no abuse of discretion here.

■ First, the district court did not abuse its discretion in refusing to certify a nationwide class of federal prisoners. The lower court based its decision to confine the class to those imprisoned in the Middle District of Pennsylvania on the policy of preserving inter-circuit comity. *See Bijeol v. Benson,* 513 F.2d 965, 968 (7th Cir.1975). It is within the district court's discretion to conclude that classwide consideration of the legality of the parole guidelines and the constitutionality of the PCRA might interfere with the litigation of similar issues in other judicial districts. *See Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979).

■ Next, the district court did not abuse its discretion in refusing to certify the class on the question of the propriety of guidelines that allow the Commission to treat prisoners sentenced under 18 U.S.C. § 4205(a) the same as those sentenced under 18 U.S.C. § 4205(b). The lower court based this decision on the "negotiated give-and-take" of counsel at the pre-trial conference.[5] It reasoned that because the parties agreed at the conference to abandon the proposed subclass of prisoners sentenced under 18 U.S.C. § 4205(b) and because no objection was raised to certifying the subclass of prisoners sentenced under 18 U.S.C. § 4205(a), its decision to certify only the latter subclass was proper. Having certified that limited subclass, the district court concluded that it would be improper to allow that subclass to litigate an issue that implicated the interests of the non-certified

subclass as well. As the parties have not provided us with any documentation of the pre-trial negotiations to assist us in our review of the district court's disposition of this issue below, deference to that court's exercise of discretion is appropriate. Moreover, in the view we take on the substantive merits of this case, any abuse of discretion relating to the disposition of this class action determination, or the one concerning certification of a nationwide class, would be harmless.

■ Finally, the district court did not abuse its discretion in refusing to certify the class on the question of the legality of the parole guidelines as applied. The district court reasoned that:

> The growing number of prisoner cases in which federal courts have specifically found that the potential parolee has received individualized application of the guidelines clearly reflects the varying issues of fact that emerge in the application issue. *See, e.g., United States ex rel. Goldberg v. Warden,* 622 F.2d 60, 65 (3d Cir.1980); *Priore v. Nelson,* 626 F.2d 211, 216 (2d Cir.1980). The factual questions inherent in making a parole decision under the guidelines involve too many individual case variations to be the proper subject of a class action. *Locicero v. Day,* 518 F.2d 783, 785 (6th Cir.1975).

*Id.,* slip op. at 8 (footnote omitted). In addition, although this class action was brought under Rule 23(b)(2), F.R.Civ.P.,

**5.** The district court explained:

> At the conference we held on July 2, 1980, counsel for Plaintiff and Defendants presented their arguments for and against the proposed subclasses. Plaintiff's counsel agreed to drop Subclass II [prisoners sentenced under § 4205(b)(1) and (b)(2)] and Subclass I(b) [prisoners sentenced under § 4205(a) who have been granted a presumptive release date which requires them to serve one-third of their sentence in prison] and Defendants' counsel could present no opposition to a certification of Subclass I(a) [prisoners sentenced under § 4205(a) who have been, or will be, denied parole and continued to the expiration of their sentence]. In the report filed on July 17, 1980, Defendants still focused no objections on the certification of

> Subclass I(a). We conclude, therefore, that Defendant has presented no opposition to Subclass I(a). In his response to Defendants' report, filed on July 25, 1980, Plaintiff's counsel suggests a new Subclass I for our consideration. We will base our decision on what class to certify, however, on the negotiated give-and-take of counsel at the conference. The elimination of Subclasses I(b) and II negates Defendants' arguments about adverse interests within the class. The § 4205(b) application issue is therefore dropped because Subclass I(a), the class we certify herein, includes no federal prisoners sentenced thereunder.

> *Geraghty v. United States Parole Commission,* No. 76–1467, slip op. at 4 n. 4 (M.D.Pa. Dec. 10, 1980), *reprinted in* app. at 27.

rather than under Rule 23(b)(3), F.R.Civ.P.,[6] thereby suggesting that individual case variation should not bar classwide treatment of the application issue, we have previously committed to the district court the discretion to deny certification in Rule 23(b)(2) cases in the presence of "disparate factual circumstances." *Carter v. Butz,* 479 F.2d 1084, 1089 (3d Cir.), *cert. denied,* 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973). We will thus defer to the discretion exercised here by the district court. We now turn to the two substantive issues raised by appellant—the validity of the guidelines under the PCRA and the constitutionality of the statute.

## VI.

We first address appellant's contention that the guidelines violate the PCRA because they do not specifically require the Commission to consider (1) a prisoner's rehabilitation and institutional performance or (2) the length of his sentence.

### A.

In addressing appellant's institutional rehabilitation argument, we look first to the language of the statute. There is no doubt that the PCRA requires the Commission to consider rehabilitation and institutional behavior in its parole decisionmaking process. Specifically, the preamble to 18 U.S.C. § 4206(a) makes satisfactory institutional conduct a prerequisite to granting release on parole. If the Commission determines that a prisoner's conduct record is poor, it need not inquire further; parole will be denied. In this way, the statute sanctions the use of institutional performance as a negative factor. If the Commission determines that a prisoner has shown good institutional conduct, however, it must then go on to consider both the nature and

circumstances of the offense and the history and characteristics of the prisoner to determine whether parole release should be granted. 18 U.S.C. § 4206(a). As part of this inquiry, 18 U.S.C. § 4207 directs the Commission to consider, *inter alia,* "reports and recommendations which the staff of the facility in which such prisoner is confined may make." Reading 18 U.S.C. §§ 4206 and 4207 together, therefore, suggests that both positive and negative institutional behavior are part of the "history and characteristics of a prisoner" that must be reviewed by the Commission. Thus, as we read the statute, institutional behavior, while certainly not the primary factor to be considered in determining whether to grant parole, must be given some consideration in the parole decisionmaking process. *See Hayward v. United States Parole Commission,* 659 F.2d 857, 861 (8th Cir.1981); *Moore v. Nelson,* 611 F.2d 434, 438 (2d Cir. 1979); *Shahid v. Crawford,* 599 F.2d 666, 670 (5th Cir.1979).

We find the guidelines to be consistent with this stated statutory directive. First, the guidelines are "predicated upon good institutional conduct and program performance." 28 C.F.R. § 2.20 (1981). To that extent, therefore, they do not eliminate rehabilitative considerations. Moreover, the guidelines do not operate in a vacuum. Merely because they are employed by the Commission to determine a presumptive release date for a well-behaved prisoner, without factoring in positive rehabilitative conduct into the parole prognosis determination, does not mean that rehabilitative progress or the lack thereof is ignored in the parole decisionmaking process. Unusually good or bad performance may "justify" a parole release decision earlier or later than the guideline time indicated. 28

---

6. Rule 23 provides in relevant part:

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropri-

ate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

. . . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . .

C.F.R. § 2.20(c) (1981). As the Commission stated at oral argument:

> If a person has a bad institutional record, generally it's going to be a record which has developed sometime after the initial hearing, because the initial hearing is held at the beginning of imprisonment. When that prisoner comes up for his second parole hearing, what we call a Statutory Interim Hearing, the Commission will take the original presumptive release date and extend that to some later date based on the seriousness and frequency of the institutional disciplinary violations. Similarly, if a prisoner has an exceptionally good institutional record, the Parole Commission [can] advanc[e] the release date . . . .

Transcript of Oral Argument 25–26.

Further, the Act's movement away from conditioning parole release on positive institutional behavior, as reflected in the guidelines promulgated pursuant thereto, is supported by legislative history. The Joint Explanatory Statement of the Committee of Conference on the PCRA makes it clear that Congress did not intend to require the Commission to use rehabilitation or any other particular factor in devising its guidelines:

> It is the view of the Conferees that the Parole Commission must make judgments as to the probability that any offender would commit a new offense based upon considerations which include comparisons of the offender with other offenders who have similar backgrounds. The use of predictive devices is at best an inexact science, and caution should be utilized. Such items as prior criminal records, employment history and stability of living patterns have demonstrated their usefulness in making determinations of probability over a substantial period of time. These are not written into the statute, however, as *it is the intent of the Conferees to encourage the newly created Parole Commission to continue to refine both the criteria which are used and the means for obtaining the information used therein.*

H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 26, *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 351, 358–59 (emphasis added). The Conferees pointedly stated that "the weight assigned to individual factors (in parole decisionmaking) is solely within the (commission's) broad discretion." *Id.* at 360.

Additionally, Congress recognized that in many cases the prisoner could do little, if anything, to improve his parole prospects:

> The Conferees intend that this requirement for advice on future parole prospects be narrowly construed. In situations in which the prisoner has been convicted of a serious offense, there may well be nothing that he can do to enhance his parole potential until service of some period of time has been completed. Moreover, promises of parole should not be used to coerce inmate participation in institutional programming.

*Id.* at 362. We interpret this passage of the Conference Report as an implicit acknowledgement that positive institutional behavior may have little impact on the parole decision.

Distilled to its essence, therefore, appellant's rehabilitation argument seems to resemble a classic Greco-Roman *argumentum ad ignoratium,* to-wit, that since the statute did not *prohibit* a guideline on rehabilitation, the Commission was required to provide one. We conclude that the statute did not require such a guideline and, even if it did, the guidelines, taken together with the other parole regulations, sufficiently account for institutional behavior in the parole release decisionmaking process for us to uphold the guidelines under the PCRA.

## B.

◼ Appellants also contend that the guidelines violate the PCRA because they do not provide for consideration of sentence length in the parole decisionmaking process. To resolve this inquiry, we again must look to the language of the statute and its legislative history. We find that the statute itself makes no explicit mention of the sentence actually imposed as a factor the Com-

mission must consider. Further, as the district court found, it is difficult to construe the general criteria set forth in 18 U.S.C. § 4206(a) as implicitly encompassing sentence length. The lower court reasoned:

> [t]he twin conclusions that release of a prisoner would not "depreciate the seriousness of his offense or promote disrespect for the law," and would not "jeopardize the public welfare" are reached by examining "the nature and circumstances of the offense" and "the history and characteristics of the prisoner." 18 U.S.C. § 4206. Thus, the Commission must review the character of the *offense,* not the sentence imposed for that offense. Arguably, "the history and characteristics of the prisoner," 18 U.S.C. § 4206(a), could include the sentence he is currently serving. When Congress expressly itemized the information that the Commission is required to consider, however, it failed to specify sentence length. Instead, Congress included in the list "recommendations regarding parole ... by the sentencing judge." 18 U.S.C. § 4207(4).

*Geraghty,* 552 F.Supp. at 287 (emphasis in original).

In addition, the legislative history does not reveal any intent on the part of Congress to require the Commission to consider sentence length in making its parole release decisions. In fact, the Conference Report indicates that the substance of the judgments made by the Commission under 18 U.S.C. § 4206 is completely within its discretion. H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 26, *reprinted in* 1976 U.S. Code Cong. & Ad.News 351, 358. Further, the Conference Report states:

> Determinations of just punishment are part of the parole process, and these determinations cannot be easily made because they require an even-handed sense of justice. ... it is important for the parole process to achieve an aura of fairness by *basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances.*

*Id.* (emphasis added). Finally, the Conference Report characterizes parole as having "the practical effect of balancing differences in sentencing policies and practices between judges and courts." *Id.* at 352. A finding that the parole decisionmaking process must use the individual sentence length as its starting point would frustrate these directives. Moreover, as previously set forth, the minimum incarceration ordered by the sentencing judge must always be respected by the Commission, depending upon whether the sentence is imposed under 18 U.S.C. §§ 4205(a), 4205(b)(1), or 4205(b)(2). We hold, therefore, that although the guidelines do not explicitly consider sentence length as part of the parole decisionmaking process, this failure does not violate the PCRA. On the contrary the statute instructs the Commission to use its own judgment in factoring sentence length because sentencing and parole are separate, although related, processes.

### VI.

This brings us to Geraghty's final contention that a statutory construction by us that the PCRA properly authorizes the guidelines would render the statute unconstitutional as either an impermissible delegation of a judicial function or a standardless delegation of a legislative function.

### A.

Geraghty's constitutional attack starts where his attack on the validity of the guidelines left off. He argues that the Commission cannot, as it is directed to do, attempt to eliminate sentence disparity if it ignores the length of the sentence imposed by the trial judge. However, if, as we have just concluded, the Commission need not expressly consider sentence length in the parole decisionmaking process, then, in effect, it is making sentencing decisions. If such decisions are properly authorized by PCRA, appellant continues, the statute, as so construed, would violate the Constitution as an impermissible delegation of a judicial function to the executive. As authority for both these arguments, appellant seizes on a statement by our court, speaking through

Judge Adams, in *Geraghty v. United States Parole Commission:*

> When ... the parole authority focuses consideration entirely on factors of deterrence, incapacitation and retribution, it takes into account almost exclusively the very factors that are available to the sentencing judge.... At least where the prior determinations of the judicial branch are given no weight, therefore, serious questions are raised whether the constitutional protections provided by an independent judiciary are being undermined.

579 F.2d at 261. But this statement of our court must be considered in light of the development of our law. When *Geraghty* was decided, its approach was congruent with this court's views, as summarized in *Addonizio v. United States,* 573 F.2d 147 (3d Cir.1978), *rev'd,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979):

> In the seminal case of *United States v. Salerno,* 538 F.2d 1005 (3d Cir.1976), this court formulated a rule that resentencing is required in a § 2255 proceeding where implementation of the Parole Commission's guidelines frustrated the sentencing judge's probable expectations in the imposition of a sentence pursuant to 18 U.S.C. § 4208(a)(2). In that case we found that the sentencing judge's intentions had been clearly stated at the time of sentencing. Subsequently, in *United States v. Somers,* 552 F.2d 108, 113 (3d Cir.1977), we emphasized that "the intent and expectation of the district court judge who sentences under § 4208(a)(2) ... are controlling and ... must be searched out to determine if relief may be ordered under 28 U.S.C. § 2255." Further, we said that "in our judgment, there can be no better evidence or a sentencing judge's expectations or intent than his own statement of those facts," *id.,* and determined that the intent or expectation could be derived from the

sentencing judge's statement at the § 2255 hearing. In *United States v. Solly,* 559 F.2d 230 (3d Cir.1977), we extended the rule of *Salerno* and *Somers* to a sentence imposed pursuant to 18 U.S.C. § 4208(a)(1).

573 F.2d at 150 (footnote omitted). Our opinion in *Addonizio,* issued two weeks prior to our opinion in *Geraghty,* represented the high water mark of this court's stated philosophy that notwithstanding intervention of parole guidelines, "a sentencing judge's intent and probable expectations should be vindicated to the fullest extent possible." 573 F.2d at 152. Speaking through the writer of the present opinion, we stated:

> The rationale underlying this broad discretion afforded the sentencing judge is the same as that supporting the latitude given the trial judge in his other discretionary functions, namely, "the superiority of his nether position. It is not that he knows more than his loftier brothers; rather, he sees more and senses more." M. Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635, 663 (1971). Given this near-absolute control over maximum punishment, it would necessarily follow that the sentencing judge's intentions and expectations as to actual time of incarceration should be vindicated to the greatest extent possible.

573 F.2d at 152. The observations of the *Geraghty* panel relied on by appellant reflect this philosophy precisely.

But this court's approach, as reflected in *Geraghty* and *Addonizio,* was not approved by the Supreme Court. In *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the Court forcefully and totally rejected the accretion of precepts emphasizing the importance of the sentencing court's views as reflected in our *Salerno, Somers, Solly, Addonizio and Geraghty* opinions.[7] Where we had stated that "the

---

7. Recently, a panel of this court stated:
   [n]otwithstanding *Geraghty's* vacatur on other grounds [by the Supreme Court] and the fact that its holding represents the minor-

ity position in the federal appellate courts, ... *Geraghty* appears to have retained its vitality as the law of this Circuit, *see United States v. Ferri* ..., 652 F.2d [325] at 327–28

sentencing judge's intention and expectation as to the actual time of *incarceration* should be vindicated to the greatest extent possible," 573 F.2d at 152 (emphasis supplied), the Supreme Court flatly said:

> The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met.

*Addonizio,* 442 U.S. at 190, 99 S.Ct. at 2243. The Court made it crystal clear that

> [t]he decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges. The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission.

*Id.* at 188–89, 99 S.Ct. at 2242–43 (footnotes omitted). Although in *Geraghty* the Supreme Court was careful to explain that it was not meeting the precise question now before us—whether the statute, if construed to allow for the guidelines then becomes an unconstitutional infringement by the executive into the area of judicial decisionmaking—we conclude that its previous decision in *Addonizio* requires a rejection of appellant's present constitutional contention.

[3 Cir.1981]; *United States ex rel. Goldberg v. Warden* . . ., 622 F.2d at 65. However, to the extent that the vacatur may still be said to have undermined its force as binding precedent, we now reaffirm *Geraghty's* holding and adopt its reasoning as our own. *United States ex rel. Forman v. McCall,* 709 F.2d 852 (3d Cir.1983). Although this state-

Although the Court in *Addonizio* did not couch its decision in constitutional terms, we suggest that it would be attributing to the Supreme Court maximum dalliance in sophistry to argue that it might vigorously state in 1979 a doctrine that severely limited the sentencing court's powers vis-a-vis the PCRA, and later, in this or another case, entirely undercut its reasoned and powerful substantive decision and say, "Oops, our unanimous decision in 1979 was patently unconstitutional!" We refuse to impute such jurisprudential fickleness to the highest court of this land. Accordingly, we believe that the reasoning of *Addonizio* also controls our resolution of appellant's impermissible delegation of judicial authority argument. In addition to our conviction that *Addonizio* is dispositive, we also hold that the PCRA, construed so as to authorize the guidelines, does not violate the separation of powers doctrine. We now turn to that analysis.

### B.

The federal Constitution, unlike some state constitutions, has no express provision which prohibits the officials of one branch of government from exercising functions of the other branches. Instead the doctrine of separation of powers is inferred from the fact that the legislative, executive, and judicial functions are described in three separate articles of the Constitution. *Springer v. Philippine Islands,* 277 U.S. 189, 201, 48 S.Ct. 480, 482, 72 L.Ed. 845 (1928). The Constitution does not require three airtight departments of government. *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). As Chief Justice Warren observed in *United States v. Brown,* 381 U.S. 437, 443, 85 S.Ct. 1707, 1712, 14 L.Ed.2d 484 (1965):

ment could be taken to suggest that our court's decision in *Geraghty* remains alive, even after *Addonizio,* we decline to read it that way. As *Forman* concerned only the issue of whether retroactive application of the parole guidelines constitutes a violation of the ex post facto clause, we limit its reaffirmation of *Geraghty* to that issue.

This "separation of powers" was obviously not instituted with the idea that it would promote governmental efficiency. It was, on the contrary, looked to as a bulwark against tyranny. For if governmental power is fractionalized, if a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation, no man or group of men will be able to impose its unchecked will.

The separation of powers inquiry is not so much a review of theoretical abstractions of "who ought to do what" as it is a pragmatic analysis of the extent to which an act by one branch of government prevents another from performing its assigned duties and disrupts the balance among the coordinate departments of government. *Nixon,* 433 U.S. at 443, 97 S.Ct. at 2790.

■ Unlike interpreting the Constitution or adjudicating disputes, sentencing is not inherently or exclusively a judicial function. *Ex parte United States,* 242 U.S. 27, 41–42, 37 S.Ct. 72, 74–75, 61 L.Ed. 129 (1916) (no inherent judicial power to suspend operation of a term of imprisonment). The legislature can limit the judiciary's authority to impose a probationary sentence, *United States v. Denson,* 603 F.2d 1143 (5th Cir. 1979) (in banc), require that a mandatory term of years be imposed, *United States v. Davis,* 560 F.2d 144 (3d Cir.), *cert. denied,* 434 U.S. 839, 98 S.Ct. 133, 54 L.Ed.2d 102 (1977), or preclude a rehabilitative sentencing option, *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). Circumscribing the judiciary's authority as to what length of imprisonment may be imposed has been found to be proper invasion of that branch's authority. *Smith v. United States,* 284 F.2d 789 (5th Cir.1960) (upholding constitutionality of 18 U.S.C. § 2114 requiring imposition of maximum term); *United States v. Lewis,* 300 F.Supp. 1171 (E.D.Pa.1969) (upholding constitutionality of 26 U.S.C. § 7237 requiring imposition of mandatory sentence).

■ Recent Supreme Court decisions describe the interaction of the three branches of government in sentencing. Deciding what factors a judge may consider in imposing incarceration, the Court in *United States v. Grayson,* 438 U.S. 41, 47, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978), set out the respective roles of the judiciary and the executive branch:

> [T]oday the extent of a federal prisoner's confinement is initially determined by the sentencing judge, who selects a term within an often broad, congressionally prescribed range; release on parole is then available on review by the United States Parole Commission which, as a general rule, may conditionally release a prisoner any time after he serves one-third of the judicially fixed term. See 18 U.S.C. § 4205 (1976 ed.).

As we emphasized earlier, *Addonizio* reiterated this three-way sharing of responsibility in which Congress sets the statutory maximum sentence, the courts impose sentences within those limits, and the Commission establishes release dates within the eligibility range of the courts' sentences. Both *Addonizio* and *Grayson* echo Chief Justice Warren's observation on the separation of powers doctrine that "a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation." *United States v. Brown,* 381 U.S. at 443, 85 S.Ct. at 1712.

Acknowledging these principles, courts that have expressly ruled on this issue have determined that the parole guidelines adopted under the PCRA do not unconstitutionally infringe on a judicial function. *See e.g., Artez v. Mulcrone,* 673 F.2d 1169 (10th Cir.1982); *Page v. United States Parole Commission,* 651 F.2d 1083 (5th Cir.1981); *Priore v. Nelson,* 626 F.2d 211 (2d Cir.1980); *Moore v. Nelson,* 611 F.2d 434 (2d Cir.1979); *Joost v. United States Parole Commission,* 535 F.Supp. 71 (D.Kan.1982); *Hawkins v. United States Parole Commission,* 511 F.Supp. 460 (E.D.Va.1981), *aff'd,* 679 F.2d 881 (4th Cir.1982); *Wilden v. Fields,* 510 F.Supp. 1295 (W.D.Wis.1981); *Garcia v. United States Board of Parole,* 409 F.Supp. 1230 (N.D.Ill.1976), *rev'd on other grounds,* 557 F.2d 100 (7th Cir.1977).

In sum, if Congress may limit the authority to impose certain punishments, it also may limit the judicial sentencing function to that of imposing maximum and minimum terms, and, without offending the Constitution, establish in the executive branch a parole commission which, within those judicially-imposed limits, makes a completely independent decision as to the actual release date. Not only is sentencing not an exclusively judicial prerogative, the PCRA does not eviscerate the effect of the judge's selection of a particular sentence length. The Commission may not require a prisoner to spend a single day in prison. longer than his judicial sentence dictates, regardless of whether it thinks that the judge mischaracterized the nature of the offense or the offender's potential for committing further harm. In addition, the Commission may not release a prisoner even one day earlier than his judicially set parole eligibility date unless permission is obtained from the court under 18 U.S.C. § 4205(g).[8]

### C.

■ Appellant's final constitutional argument, suggesting that the PCRA is unconstitutional because it represents the standardless delegation of a legislative function, also derives from a single observation made by this court when this case was previously before us. Among the concepts we suggested that plaintiff had to establish at trial to give force and sinew to his constitutional argument was, in our words, the possibility that the PCRA "delegate[s] so crucial a legislative function [as the redrafting federal criminal penalties] to a non-representative body with no standards other than a direction that the results 'not depreciate the seriousness of the offense' and 'be consistent with the public welfare.'" *Geraghty*, 579 F.2d at 263. We have carefully examined the record and conclude that appellant failed at trial to supply evidence or provide legal authorities to demonstrate that the PCRA delegates impermissible

public policymaking prerogatives to the Commission or that the statute is void of ascertainable standards against which a court may measure the Commission's exercise of discretion.

Simply stated, the PCRA does not permit the Commission to redraft federal criminal statutes. As succinctly explained by the district court:

> It is clear from ... the interaction between the statutory maximum, the sentence imposed, and the parole release date, that the guidelines do not perform any such function. The federal criminal statutes, on the one hand, fix the maximum penalties for the crimes they define. The guidelines, on the other hand, operate *within* the limits set by the statute, as well as within the confines of the sentence. Moreover, ... the guidelines specify time ranges for the *typical* length of imprisonment before parole, as opposed to *maximum* time periods set by statute, for various combinations of offense severity and offender characteristics.

*Geraghty*, 552 F.Supp. at 292 (emphasis in original). What appellant does not recognize—or perhaps refuses to—is that because the guidelines establish the time to be served before release in the *typical* case, they do not conflict with or assume the legislative function of setting maximum penalties for the most heinous ones.

Yet, even if the statute could be construed as delegating some legislative power to the Commission, we think that compared to other administrative law precedents it withstands constitutional attack. Courts have consistently upheld much more expansive delegations of authority to agencies to regulate the conduct of members of the public. *See, e.g., Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (price controls imposed under Emergency Price Control Act of 1942); *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381,

8. 18 U.S.C. § 4205(g) provides:
   At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served.

The court shall have jurisdiction to act upon the application at any time and no hearing shall be required.

60 S.Ct. 907, 84 L.Ed. 1263 (1940) (sales tax imposed under Bituminous Coal Conservation Act); *United States v. Gordon,* 580 F.2d 827 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978) (drug control standards established by the Comprehensive Drug Abuse Prevention and Control Act). In fact, the Supreme Court has declared statutes unconstitutional on the basis of an improper delegation of a legislative function on only two occasions. See *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

Accordingly, we determine that the statutory criteria set forth by Congress in 18 U.S.C. § 4206 are sufficiently specific to guide the Commission in making parole release decisions. They identify the duties and responsibilities of the Commission and enable a reviewing court to determine whether the guidelines use statutorily permissible parole factors. *See Bowles v. Willingham,* 321 U.S. 503, 515, 64 S.Ct. 641, 647, 88 L.Ed. 892 (1944). In addition, the legislative history of the PCRA discusses in some detail the interpretation of virtually every phrase in § 4026, thereby giving the Commission and the courts added insight into how parole decisions should be made under the statute. H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 25–27, *reprinted in* 1976 U.S.Code Cong. & Ad.News 351, 357–60.

These two sources—statutory text and legislative history—provide far more guidance as to the will of Congress in enacting the statute than the standards that have been used to sustain other delegations of legislative power. *See, e.g., Lichter v. United States,* 334 U.S. 742, 785–86, 68 S.Ct. 1294, 1316–17, 92 L.Ed. 1694 (1948) (permitting recovery of "excessive profits" earned on war contracts); *Yakus,* 321 U.S. at 427, 64 S.Ct. at 668 (permitting price controls that are "generally fair and equitable"); *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 600, 64 S.Ct. 281, 286, 88 L.Ed. 333 (1944) (permitting Commission to fix "just and reasonable" rates for natu-

ral gas); *National Broadcasting Co. v. United States,* 319 U.S. 190, 225–26, 63 S.Ct. 997, 1013–14, 87 L.Ed. 1344 (1943) (permitting licensing of radio communications "as public interest, convenience or necessity requires"); *New York Central Securities Corp. v. United States,* 287 U.S. 12, 24, 53 S.Ct. 45, 48, 77 L.Ed. 138 (1932) (permitting consolidation of carriers when "in the public interest"). It is clear, therefore, that the delegation of a legislative function need not be accompanied by a precise formula for the agency to apply. Instead, Congress need only lay down an "intelligible principle" to which the agency must conform. *National Cable Television Assn. v. United States,* 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974); *Hampton v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). The standards given to the Commission amply satisfy this requirement.

Further, courts that have expressly considered the question of whether the PCRA violates the Constitution as an impermissible delegation of a standardless legislative function have determined that it does not. *See, e.g., Priore v. Nelson,* 626 F.2d 211 (2d Cir.1980); *Moore v. Nelson,* 611 F.2d 434 (2d Cir.1979); *Wilden v. Fields,* 510 F.Supp. 1295 (W.D.Wis.1981). Cf. *Bachman v. Jeffes,* 488 F.Supp. 107 (M.D.Pa.1980) (upholding under state constitution a Pennsylvania statute requiring the Board to consider if and when release from a judicially imposed term of confinement should occur). Congress is presumed to have acted within the bounds of the Constitution in enacting legislation. *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960). That presumption is strongly supported by our analysis of the PCRA.

### VII.

Accordingly, we will affirm the judgment of the district court in all respects.

### SUR PETITION FOR REHEARING

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLO-

VITER and BECKER, Circuit Judges, and RE, Chief Judge.*

ALDISERT, Circuit Judge.

The petition for rehearing filed by Appellant Geraghty, et al. in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

ADAMS, Circuit Judge, would grant the petition for rehearing.

Statement by ADAMS, Circuit Judge, sur the denial of the petition for rehearing.

I dissent from the denial of rehearing in this case. Without addressing the merits of the panel's conclusions on the constitutionality of the Parole Commission and Reorganization Act (PCRA) as applied, I believe that the opinion, in key passages, is inconsistent with prior decisional law of this Circuit and should therefore be resolved by this Court as a whole. In particular, the interpretation of the PCRA in the opinion runs counter to the discussion in *Geraghty v. U.S. Parole Commission,* 579 F.2d 238, 259 (3d Cir.1978). The treatment by the earlier panel of the constitutional issues raised by the Parole Commission's assumption of traditional judicial functions was left untouched by both the Supreme Court's vacatur of *Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), as well as by its opinion reversing this Court in *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). In the latter, the Supreme Court specifically limited its discussion to the collateral habeas attack rather than to a direct constitutional challenge, as is present here. Equally significant, the ruling in *Geraghty* was specifical-

ly reaffirmed just four months ago in *Forman v. McCall,* 709 F.2d 852 (3d Cir.1983).

Because of the disparity between these opinions of this Court, I believe this case should be considered in banc as required by the Internal Operating Procedures, Chapter VIII C.