UNITED STATES of America, Plaintiff,

v.

Ricardo MACIAS–PEDROZA,
Defendant.

UNITED STATES of America, Plaintiff,

v.

Francisco Rafael
HUGUES–ESPINOZA, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jose Ernesto MORENO–GREEN and
Oscar Lara Navarrete, Defendants.

UNITED STATES of America, Plaintiff,

v.

Roger A. CONTRERAS, Defendant.

UNITED STATES of America, Plaintiff,

v.

Richard A. SLEZAK, Defendant.

UNITED STATES of America, Plaintiff,

v.

Manuel JIMENEZ–TORRES, Defendant.

UNITED STATES of America, Plaintiff,

v.

Mario Alberto
CALDERON–PAZ, Defendant.

UNITED STATES of America, Plaintiff,

v.

Felix MADERA–ESPINOZA, Carlos
Chavez–Sandoval and Alberto
Martinez Pino, Defendants.

UNITED STATES of America, Plaintiff,

v.

Octavio MERAZ–PERU, Defendant.

UNITED STATES of America, Plaintiff,

v.

Robert DAWSON, Defendant.

UNITED STATES of America, Plaintiff,

v.

Brian CRUM, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jose Luiz GRIJALVA–FUENTES and
Hector Alfredo Ruiz–Sanchez,
Defendants.

UNITED STATES of America, Plaintiff,

v.

Sergio BETANCOURT–GUTIERREZ and
Oscar Del Val Trevino, Defendants.

UNITED STATES of America, Plaintiff,

v.

Luis Angel CARRANZA, Defendant.

UNITED STATES of America, Plaintiff,

v.

Armando URREA, Defendant.

UNITED STATES of America, Plaintiff,

v.

Thomas HUSKIE, Defendant.

Nos. CR 88–13 TUC RMB, CR 88–36 TUC
ACM, CR 88–64 TUC RMB, CR 88–41
PHX RGS, CR 88–42 PHX RCB, CR
88–16 TUC RMB, CR 87–435 TUC RMB,
CR 88–30 TUC RMB, CR 88–32 TUC
RMB, CR 87–420 TUC ACM, CR 88–90
TUC ACM, CR 87–433 TUC ACM, CR
88–38 TUC RCB, CR 88–35 PHX PGR,
CR 88–121 TUC ACM, CR 88–88M TUC
ACM and CR 87–5487M PHX EHC.

United States District Court,
D. Arizona.

April 19, 1988.

David A. Kern, U.S. Atty., for U.S. in CR 88–13 TUC RMB.

Jacqueline Marshall, Fed. Public Defender, Tucson, Ariz., for Ricardo Macias–Pedroza and Francisco Rafael Hugues–Espinoza.

Gary Clifford Korn, U.S. Atty., for U.S. in CR 88–36 TUC ACM.

Reese Bostwick, U.S. Atty., for U.S. in CR 88–64 TUC RMB, CR 88–30 TUC RMB, and CR 88–35 PHX PGR.

Dennis Murphy, Tucson, Ariz., for Joaquin Arturo Contreras.

Walter B. Nash, III, Tucson, Ariz., for Oscar Lara Navarrete, Octavio Meraz–Peru and Alejandro Hernandez Huerta.

Michael J. Bloom, Tucson, Ariz., for Jose Ignacio Acosta–Medina.

Michael L. Piccarreta, Tucson, Ariz., for Jose Ernesto Moreno–Green.

Michael O. Zavala, Tucson, Ariz., for Alejo Hernandez Dominguez.

Philip G. Espinosa, U.S. Atty., for U.S. in CR 88–41 PHX RGS.

Javier Chon–Lopez, Fed. Public Defender, Tucson, Ariz., for Francisco Javier Ramirez–Morando.

Janet K. Johnson, U.S. Atty., for U.S. in CR 88–42 PHX RCB.

Alex A. Gaynes, Tucson, Ariz., for Leonard K. Parker.

**1408**

Cindy K. Jorgenson, U.S. Atty., for U.S. in CR 88–16 TUC RMB.

Jose H. Robles, Fed. Public Defender, Tucson, Ariz., for Pedro Avila–Castorena.

Arthur J. Hutton, Tucson, Ariz., for Salvador Reyes–Cerda and Alberto Martinez–Pino.

Roger L. Duncan, U.S. Atty., for U.S. in CR 87–435 TUC RMB.

Francisco Leon, Tucson, Ariz., for Mario Alberto Calderon–Paz, Jose Luis Grijalva–Fuentes and Hector Alfredo Ruiz–Sanchez.

Frank R. Zapata, Fed. Pub. Defender, Tucson, Ariz., for Saturnino Armenta–Espinoza and Sergio Betancourt–Gutierrez.

Frederic Joseph Dardis, Tucson, Ariz., for Carlos Chavez–Sandoval.

Isabel Garcia Gallegos, Tucson, Ariz., for Felix Madera–Espinoza.

Jeffrey D. Bartolino, Tucson, Ariz., for Francisco Martinez–Pino.

Stephen Ralls, Tucson, Ariz., for Ramon Madera–Espinoza.

Ernesto Soto, Tucson, Ariz., for Abel Pena–Benitez.

David A. Aguilar, Tucson, Ariz., for Ernesto Rodriguez–Salgado and Enrique Cruz–Hernandez.

Marshall D. Tandy, Tucson, Ariz., for Juan Manuel Soto–Roman.

William R. Stevens, U.S. Atty., for U.S. in CR 88–32 TUC RMB.

Roger L. Duncan, U.S. Atty., for U.S. in CR 87–420 TUC ACM.

Dan W. Montgomery, Tucson, Ariz., for Federico Estrada Escalante.

Armand Salese, Tucson, Ariz., for Frank Joseph Hutchison.

Janet K. Johnson, U.S. Atty., for U.S. in CR 88–90 TUC ACM.

D. Jesse Smith, Tucson, Ariz., for Roger Blane Crum.

David R. Sherman, Tucson, Ariz., for Douglas Alan Crum.

Barbara Sattler, Tucson, Ariz., for Judy Mary Evans.

Cindy K. Jorgenson, U.S. Atty., for U.S. in CR 87–433 TUC ACM, and CR 88–38 TUC RCB.

Peter B. Keller, Tucson, Ariz., for Antonio Orozco–Delgado.

Gloria Torres, Fed. Public Defender, Tucson, Ariz., for Hildeberto Moreno–Bustamante.

John G. Bogart, Tucson, Ariz., for Donald Wayne Gardner, Brian Crum and Armando Urrea.

William H. Callaway, Tucson, Ariz., for Charles Ford.

Richard C. Henry, Tucson, Ariz., for John Bailey.

Monte E. Hester, Tacoma, Wash., Robert Don Nelson, Tucson, Ariz., for Leslie Edward Strobel.

Barry Baker Sipe, Tucson, Ariz., for Irene Delora Edwards.

Yvonne Ayers, Tucson, Ariz., for Edward Robert Dawson.

Roger L. Duncan, U.S. Atty., for U.S. in CR 88–121 TUC ACM and CR 88–88M TUC ACM.

Larry J. Lingeman, Tucson, Ariz., for German Dominguez–Elias.

## ORDER DENYING MOTION TO INVALIDATE SENTENCING GUIDELINES

Before BILBY, Chief Judge, and CARROLL, MARQUEZ, ROSENBLATT, BROOMFIELD and STRAND, District Judges.

Defendants in the above-captioned cases move the court for an order declaring the sentencing guidelines ("Guidelines") recently promulgated by the United States Sentencing Commission ("Commission") unconstitutional. Upon due consideration of the memoranda and arguments of all parties and amici, the court finds that defendants arguments are not meritorious; accordingly, their motion must be denied.[1]

---

1. Because the arguments of all the defendants are substantially alike, and because all defendants request precisely the same relief, this decision neither distinguishes among the defendants' arguments nor attributes those arguments to particular defendants.

## INTRODUCTION

The Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1976, 2017, created the Sentencing Reform Act of 1984 ("the Act") (codified at 28 U.S.C. §§ 991–98 (1982 ed., Supp. III 1985)) which the defendants here challenge as unconstitutional. The Act establishes "as an independent commission in the judicial branch of the United States a United States Sentencing Commission...." 28 U.S.C. § 991(a). The Commission consists of seven voting members, and two non-voting, ex officio members—the Attorney General or his authorized representative and the chairperson of the United States Parole Commission. The President appoints members with the advice and consent of the Senate to six-year terms which are renewable for one term. 28 U.S.C. § 991(a). At least three of the Commission's voting members must be Article III judges whom the President selects from a list of six judges recommended by the Judicial Conference of the United States. *Id.* The President is empowered to remove members only for "neglect of duty or malfeasance in office or for other good cause shown." *Id.* Not more than four Commission members may belong to the same political party. *Id.* All general policies, rules, and regulations are established with the approval of at least four voting members of the Commission. 28 U.S.C. § 994(a).

Congress gave the Commission authority to create and distribute sentencing guidelines for a court's imposition of sentence in a criminal case. 28 U.S.C. § 994(a)(1). The Guidelines provide sentencing ranges for given crimes and defendants with respect to the Congressional goals underlying the Act. For example, the Sentencing Commission's role in formulating allowable ranges of sentences reflects the underlying congressional policy of attaining uniformity in sentencing. *See* S.Rep. No. 98–225, 98th Cong., 1st Sess. 37–52 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3220–35. Congress sought to eliminate the uncertain periods of incarceration produced by the division in sentencing authority between the judiciary and the Parole Commission. *See id.* at 46–49. Hence, the Parole Commission's continuing existence could not comport with the rationale of sentencing uniformity and predictability underlying the Guidelines system. Furthermore, as the senate report explained: "The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences." *Id.* at 52, 1984 U.S.Code Cong. & Admin.News 3235. Congress also sought to ensure the availability of a wide range of sentencing options while simultaneously maintaining "consistency in purpose" in sentencing. *Id.* at 59. Finally, Congress deemed rehabilitation an inappropriate basis for sentencing decisions. *See id.* at 40; *cf.* 18 U.S.C. § 3553(a)(2).

Additionally, Congress provided the Commission with a framework of specific factors for constructing the Guidelines. Congress directed the Commission to consider the following factors, among others, in establishing categories of offenses:

(1) the grade of the offense;

(2) the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense;

(3) the nature and degree of the harm caused by the offense, including whether it involved property, irreplaceable property, a person, a number of persons, or a breach of public trust;

(4) the community view of the gravity of the offense;

(5) the public concern generated by the offense;

(6) the deterrent effect a particular sentence may have on the commission of the offense by others; and

(7) the current incidence of the offense in the community and in the Nation as a whole.

28 U.S.C. § 994(c).

Congress also directed the Commission to categorize offenders by considering factors such as the defendant's:

(1) age;

(2) education;

(3) vocational skills;

(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;

(5) physical condition, including drug dependence;

(6) previous employment record;

(7) family ties and responsibilities;

(8) community ties;

(9) role in the offense;

(10) criminal history; and

(11) degree of dependence upon criminal activity for a livelihood.

28 U.S.C. § 994(d).

The Commission utilized this two-dimensional matrix of offense and offender categories to establish sentencing ranges pursuant to the Act and "all pertinent provisions of Title 18, United States Code." 28 U.S.C. § 994(b)(1). The Guidelines which went into effect on November 1, 1987, group offenses into 43 base levels according to relative severity. After reviewing past sentencing practices the Commission calculated recommended sentences[2] for each base level. The Commission considered certain aggravating and mitigating circumstances to ascertain the gravity of specific crimes, and categorized offenders into six groups based on their criminal history. Sentencing ranges reflect the coordination of offenses and offenders within a grid.

The Act also provides the Commission with additional parameters for creating the Guidelines. For example, Section 994(h) provides that the Commission prescribe a sentence at or near the maximum for crimes of violence and certain narcotics related offenses. Certain repeat offenders also receive maximum or near maximum sentences. 28 U.S.C. § 994(h). Certain recidivists, pattern offenders, and conspira-

tors receive substantial terms of imprisonment. 28 U.S.C. § 994(i).

On the other hand, first offenders having been convicted of a nonviolent or otherwise less serious offense do not receive sentences of incarceration pursuant to the Act. 28 U.S.C. § 994(j). Section 994 also deals with other various aspects of sentencing including prison overcrowding, incremental penalties and cooperating defendants.

Finally, Congress required that the Guidelines be "entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of the offenders." Hence, Congress provided the Commission with an express framework for formulating the Guidelines pursuant to the Commission's purpose of developing a "means of measuring the degree to which the sentencing, penal and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553(a)(2) of Title 18 United States Code." 28 U.S.C. § 991(b)(2).

Defendants move the court to invalidate the Guidelines promulgated by the Commission on the following grounds: (1) the congressional authorization of Commission created Guidelines unconstitutionally delegates authority; (2) the Commission's tripartite blend of judicial, executive, and legislative functions violates the Constitution through judiciary membership which contravenes the separation of powers doctrine and impairs judicial efficiency; (3) the President's power to remove Commission members violates the separation of powers doctrine; (4) the Commission functions as an invalid inferior-Article III court; (5) the Guidelines violate due process by unduly restraining the availability of probation in violation of law; (6) application of the criminal history Guidelines offends due process because increments in the point scale for a defendant's prior record are based on past sentencing practices that the Guidelines specifically reject. Defendants also urge the court, should it uphold the constitutionality of the Guidelines, to stay application

2. Guideline sentences including incarceration are limited: "the maximum of the range established for such a term shall not exceed the minimum of that range by more than the great-

er of 25 percent or 6 months, except that if the minimum term of the range is 30 years or more, the maximum may be life imprisonment." 28 U.S.C. § 994(b)(2).

of the new sentencing guidelines pending appellate review.

## DISCUSSION

### 1. Ripeness

As a threshold matter, the court must determine whether the defendants' claims are ripe for decision. This identical question was addressed in *United States v. Arnold*, 678 F.Supp. 1463 (S.D.Cal.1988) and in *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988). In both cases the courts found, on the issue of ripeness, that, under the circumstances, the motion was fit for judicial resolution.

Having now reviewed this issue, this court finds that the instant defendants' challenge is ripe for adjudication. In so concluding, the court adopts the following portion of Judge Brewster's analysis found in *Arnold:*

Although the concept of ripeness lacks precise formulation and consistent application, the usual analysis balances two broad factors—the "fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967).

A central component of the fitness for review factor is whether the motion involves uncertain or contingent future events that may never occur. *Thomas v. Union Carbide Agriculture Products*, 473 U.S. 568, 580 [105 S.Ct. 3325, 3333, 87 L.Ed.2d 409] (1985). If such be the case, the court could find itself engaged in unnecessary law making. *See* 13Ac. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3532.1, at 114–15 (1984). The guidelines may never be invoked in this case. The defendants may decide to enter not guilty pleas and be acquitted at trial. The courts inquiry, however, should look beyond the two defendants presently before the court. Nationally, defendants are entering guilty pleas for conduct occurring after November 1, 1987. The guidelines, therefore, are mathematically certain to be immedi-

ately applicable in a finite number of cases, if not in this case.

Another consideration in weighing the fitness for review focuses on the nature of the issues before the court. Issues which are purely legal, requiring no further factual development to clarify the dispute, support fitness for judicial action. *Thomas*, 473 U.S. at 581 [105 S.Ct. at 3333]; *Plow Drivers' Local 2375 v. Smith*, 695 F.2d 390 (9th Cir.1982); *Arizona v. Atkinson, T. & S.F.R.R.*, 656 F.2d 398, 402–03 (9th Cir.1981). The issues before this court are purely legal and need no further factual development. This first part of the so-called "balancing test" supports the conclusion that this case is fit for a review.

As for the balancing factor to be weighed, i.e., the hardship on the parties of withholding review, the needs of the parties for determination are substantial, if not massive. Hundreds of cases are being analyzed and negotiated, extensive effort is being expended by the Commission, and a myriad of arrangements are being made for putting into place institutions to monitor, oversee, review, and administrate the act and its execution. The longer the constitutionality of the guidelines and the Commission remain uncertain, the deeper the system will be impacted. Furthermore, defendants presently need to decide whether to tender a guilty plea or to risk trial. They would be assisted in making an informed decision by knowing more about their prospective sentence than what the statutory maximum is for each count. In this case, as in *Thomas*, "[n]othing would be gained by postponing a decision, and the public interest would be well served by prompt resolution of the constitutionality of [the challenged statute]." *Thomas*, 473 U.S. at 582 [105 S.Ct. at 3334]. Accordingly, this court finds this case ripe for its ruling on the motion presented.

*United States v. Arnold*, at 1466.

### 2. Delegation

■ The defendants contend that Congress has unconstitutionally delegated to

the Commission its authority to fix criminal penalties. While defendants recognize that Congress need not make every single judgment in connection with sentencing rules, they believe that Congress may never delegate the power to determine criminal sanctions and that even if Congress could delegate the authority to promulgate mandatory sentencing guidelines, the instant delegation is too broad.

"The Supreme Court has invalidated delegations of legislative authority to governmental bodies on only two occasions: *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837 [79 L.Ed. 1570] (1935) and *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935)." *United States v. Chambless*, 680 F.Supp. 793, 795 (E.D.La.1988). In all other cases, the Supreme Court has upheld expansive delegations by Congress. *See, e.g., Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed.2d 834 (1944) and cases cited therein. *Chambless*, at 795. This unswerving rejection of delegation challenges indicates a great deal of deference to Congress' power to delegate and the limited applicability of the doctrine. *Synar v. United States*, 626 F.Supp. 1374, 1384 (D.D.C.), *aff'd on other grounds sub nom. Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986).

In the more than fifty years since *Schechter Poultry* and *Panama Refining* the Supreme Court has made it clear that "[i]f Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to issue regulations is directed to conform, such legislative action is not a forbidden delegation of legislative power." *National Cable Television Ass'n v. United States*, 415 U.S. 336, 342, 94, S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974) (quoting *Hampton v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)). *Accord American Power Co. v. SEC*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946); *Yakus* 321 U.S. at 426, 64 S.Ct. at 668).

In the instant case, the court finds that Congress did set out intelligible standards and statements of purpose and that the Sentencing Reform Act, therefore, does not embody an unconstitutional delegation of legislative power. *United States v. Ruiz–Villanueva*, at 1418. "The statute outlines the policies which prompted establishment of the Commission, explains what the Commission should do and how it should do it, and sets out specific directives to govern particular situations." *Chambless*, at 796. In so concluding, the court finds the following portion of Judge Enright's analysis in *Ruiz–Villanueva* apt:

The court first notes that in the Act Congress carefully outlined its sentencing philosophy. Indeed, Congress could not have been much clearer in stating that the underlying motivation for the Act was to displace disparate sentencing with certainty and fairness. 28 U.S.C. § 991(b)(1)(B). In addition, after having considered the various competing philosophies, Congress detailed the purposes for sentencing. (Footnote omitted). 18 U.S.C. § 3553(a); 28 U.S.C. § 991(b)(1)(A). In so doing, Congress disclosed to the Commission both the "whither?" and the "why?" of sentencing reform—the destination toward which the Guidelines should point and the reasons why the destination was chosen.

But Congress did not merely point the Commission in the right direction and then unleash it to go about its task in whatever manner it saw fit. Rather, Congress explicitly instructed the Commission on what to do (set sentence ranges) and how to do it (what factors to consider in establishing categories). [Footnote omitted]. 28 U.S.C. § 994. Additionally, Congress offered specific directives (such as when heavy or light sentences would be appropriate) and commented on numerous other matters attendant to formulation of the Guidelines. (Footnote omitted) *Id.* And, of course, congress retained for itself the power to fix maximum sentence lengths. In short, Congress adequately provided the Commission with intelligible principles.

A comparison with recent delegation cases verifies this conclusion.[3] In *Geraghty, supra,* [*Geraghty v. United States Parole Commission,* 719 F.2d 1199 (3d Cir.1983), *cert. denied,* 465 U.S. 1103 [104 S.Ct. 1602, 80 L.Ed.2d 133] (1984)] the Third Circuit upheld the delegation to the Parole Commission of the power to set prisoner release dates. In *Lichter v. United States,* 334 U.S. 742 [68 S.Ct. 1294, 92 L.Ed. 1694] *reh. denied,* 335 U.S. 836 [69 S.Ct. 11, 93 L.Ed. 389] (1948), the Supreme Court upheld a delegation of legislative power to administrative officials, where that power was accompanied by the duty to construe the arguably open-ended term "excess profits." In *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591 [64 S.Ct. 281, 88 L.Ed. 333] (1944), the Court permitted the Power Commission to set "just and reasonable" rates for natural gas. In *National Broadcasting v. United States,* 319 U.S. 190 [68 S.Ct. 997, 87 L.Ed. 1344] (1943), the Court rejected a claim that the "standard of 'public interest' governing the exercise of the powers delegated to the Commission by Congress is so vague and indefinite that, if it be construed as comprehensively as the words alone permit, the delegation of legislative authority is unconstitutional." *See also Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381 [60 S.Ct. 907, 84 L.Ed. 1263] (1940); *New York Central Securities Corp. v. United States,* 287 U.S. 12 [53 S.Ct. 45, 77 L.Ed. 138] (1932); *Synar, supra.*

*Ruiz–Villanueva,* at 1417–18 *See also Arnold* at 1466–69; *Chambless,* at 795–97.

In sum, the latitude that the Commission possesses under the statute is authority to determine the appropriate kind and range of a sentence within well-defined boundaries, and, in setting that range, to weigh the relative significance of the factors enumerated by Congress. "It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the

adaption of the congressional policy to infinitely variable conditions constitute the essence of the program." *Lichter v. United States,* 334 U.S. 742, 785–86, 68 S.Ct. 1294, 1316–17, 92 L.Ed. 1694 (1948). Since Congress has established the general sentencing policy through the articulation of broad standards in the statute and legislative history, it is unnecessary for it to announce the precise formula that the Commission must apply in achieving congressional objectives. That determination properly resides with the expertise of the agency to whom the authority has been delegated. Based on the above, the court holds that the Act does not constitute an invalid delegation of legislative power.

3. Separation of Powers

Defendants further contend that the composition and functions of the Commission violate the principle of separation of powers. Defendants' argument rests principally upon their interpretation of the recent Supreme Court opinion in *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). In *Bowsher,* the Court set forth the separation of powers analysis to be applied when one branch of the government is alleged to have intruded impermissibly into the domain of another. The Court was confronted with a provision within the Emergency Deficit Control Act of 1985 ("Gramm–Rudmann–Hollings Act") which purported to reserve for Congress the power to remove the Comptroller General. Because the Court found that the Comptroller General's new duties under the Act were executive in nature, 478 U.S. at 732–33, 106 S.Ct. at 3192 ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law."), it was compelled to conclude that "[t]o permit the execution of the laws to be vested in an officer answerable only to Congress would, in practical terms, reserve in Congress control over the execution of the laws." 478 U.S. at 724, 106 S.Ct. at 3188. The Court there-

---

**3.** In *Synar,* the court pointed out that "the mode of analysis applied by the Supreme Court in this field relies substantially upon factual comparison of the delegation under challenge with delegations previously adjudicated." 626 F.Supp. at 1384–85.

fore concluded that this statutory scheme was unconstitutional since

> [t]o permit an officer controlled by Congress to execute the laws would be, in essence, to permit a congressional veto. Congress could simply remove, or threaten to remove, an officer for executing the laws in any fashion found to be unsatisfactory to Congress. This kind of congressional control over the execution of the laws, *Chada* makes clear, is constitutionally impermissible.

478 U.S. at 726, 106 S.Ct. at 3189 (citing *Chada v. INS*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

In order for the court to apply the *Bowsher* analysis to the instant matter, it must proceed with the above two-stage approach. First, it must properly classify the Commission's activities as either legislative, executive, or judicial in nature. Second, the court must then decide whether a different branch of the government exercises control over these functions. *See In re Sealed Case*, 838 F.2d 476, 518–19 (D.C. Cir.1988) (Bader Ginsburg, dissenting). Furthermore, the court adopts this two-part analysis because it mirrors defendants' two [4] contentions as to why the Act is unconstitutional: (1) the power of the judicial branch has been impermissibly expanded because the judges/commissioners decide matters beyond the "case and controversy" limitations of Article III; and (2) the power of the executive branch has been impermissibly expanded because it "controls" the Commission through the President's appointment and removal powers over the commissioners. The court addresses these theories individually.

#### a. *Alleged Judicial Expansion*

■ The defendants characterize the functions of the Commission as displaying the attributes of a legislative or executive agency. Thus, they contend these quasi-legislative or quasi-executive functions unconstitutionally expand the power of the federal judiciary beyond deciding "cases and controversies." The court notes that this issue presents the novel situation of having a justiciable issue before the court even though both parties are in agreement; at oral argument, and in their response to the amicus curiae brief of the National Association of Criminal Defense Lawyers, the government concurred with defendants' position that the functions of the Commission are executive in nature. However, the Commission itself, in its amicus curiae brief, contends that its functions are properly designated within the judicial branch.

Fortunately for the court, both the parties and the commission do agree on the governing standard which is to be applied in order to determine whether the Commissions' functions are judicial in nature. The test, as enunciated in *Nixon v. General Services Administration*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), focuses on the extent to which the challenged action prevents the affected branch from accomplishing its constitutionally assigned functions. Or as one court applying this test has formulated the query: "[D]oes the imposition of powers traditionally associated with one branch of government on officials of another branch interfere with their ability to perform their constitutionally-required duties in the branch of which they are a part?" *In re*

---

**4.** Defendants also contend that § 994(s) of the Act sets up an invalid inferior-Article III court. Section 994(s) of the enabling statute authorizes the Commission to give due consideration to a petitioner requesting modification of the guidelines used in sentencing him on the basis of changed circumstances unrelated to the petitioner. The Commission may submit proposed guideline amendments to Congress, and if any amendment reduces the term of imprisonment applicable to a particular category of offender, the Commission may then specify in what circumstances the amendment should be applied retroactively. Defendants contend that because

the above described process constitutes an Article III adjudication, the Act has set up an invalid inferior-Article III court since the commissioners serve six year terms. The court finds this argument meritless. Section 994(s) does not entail "adjudications" because the Act does not authorize modifications of *sentences*. It is the sentencing court which may, upon motion of the defendant or Bureau of Prisons, reduce the sentence in accordance with Commission policy. The Commission can only modify guidelines, the sentencing court remains vested with the authority to modify sentences.

*Application of President's Commission on Organized Crime,* 763 F.2d 1191, 1196–97 (11th Cir.1985) (*"Scaduto"*) (judicial participation on Organized Crime Commission held unconstitutional); *see also Matter of President's Commission on Organized Crime,* 783 F.2d 370, 375 (3d Cir.1986) (*"Scarfo"*) (also applying *Nixon* "functional" test and upholding judicial participation on Organized Crime Commission).

Defendants contend that the Act fails this functional test because the duties of the commissioners both quantitatively and qualitatively impair the functions of the judiciary. According to the defendants, the judicial function is quantitatively impaired because the three federal judges who serve on the Commission cannot also be expected to maintain active status in both roles. The Court rejects this argument out of hand since even if defendants could put forth empirical evidence to support their claim that these three judges do not maintain an active judicial workload—something which defendants have not done—the court could still not conclude that this "impaired" the function of the entire judicial branch.

Defendants' second argument concerning the alleged qualitative impairment of the judicial can be similarly resolved. Essentially, defendants position is that judicial participation on the Commission abrogates judicial impartiality and integrity because the judges/commissioners have "voided the discretion of other Article III judges essentially by implementing their own ideas as to what is fair and just in sentencing." Defendant's Amended Motion To Preclude Application of the Sentencing Guidelines, 22–23. Thus, according to defendants, no amount of recusal or reassignment within the judiciary of the three particular judges/commissioners will cure what defendants perceive to be impairment of judicial impartiality. The court agrees that impartiality does indeed constitute a constitutionally mandated function of the judicial branch. The court finds, however, that defendants have overstated the purpose and effect of the sentencing guidelines and therefore rejects their argument that the functions of the Commission somehow impair judicial impartiality. As has already been explored at some length in the court's discussion of the delegation doctrine issues,[5] while Congress's intent in drafting the enabling statute was to curtail a perceived wide disparity in sentencing, the Guidelines nonetheless maintain elements of discretion within this framework.[6] Thus, the court cannot conclude that the very presence of the Guidelines impairs judicial impartiality; and any direct question of conflict or impartiality which may confront an individual commissioner/judge would be effectively dealt with by the present system of recusal and reassignment.

The court further holds that rather than impairing the judicial function, the work of the Commission is actually in aid of the primarily judicial function of sentencing. While it is true that sentencing power historically has not been the exclusive province of the court, *see, e.g. Geraghty v. United States Parole Commission,* 719 F.2d 1199, 1211 (3d Cir.1983) ("Unlike interpreting the Constitution or adjudicating disputes, sentencing is not inherently or exclusively a judicial function."), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984), it is clear that Congress created the Commission for the express purpose of assisting the judiciary in its current sentencing function. The Act authorized the Commission to synthesize congressional sentencing policy so as to assist the judicial branch in carrying out its constitutional function of imposing fair and uniform sentences.

Furthermore, just as the court finds that the task of sentencing is primarily—although not exclusively—judicial in nature, so too it concludes that this independent Commission was properly designated within the judicial branch. The court concurs

---

5. This issue is also discussed at some length in the court's subsequent analysis of defendants' due process claims.

6. For example, after presiding over a trial to determine guilt, or approving a plea bargain, the sentencing judge in the particular case can take into account factors not considered by the Commission. 18 U.S.C. § 3553(b).

with Judge Enright's analysis that even though the work of the Commission appears to be "of its own species ...," the recognition of this uniqueness in no way compels the court to invalidate the Act. The test under a separation of powers inquiry is not the wooden one of whether a given case can be analogized to prior cases. Instead, it is whether a delegation of power within the judicial branch is properly in aid of the judicial function. *Nixon, supra.* And, as mentioned above, the court finds that the Commission's power was properly exercised in furtherance of the "primary judicial" function of sentencing.

*United States v. Ruiz–Villanueva,* at 1421–22; *but see United States v. Arnold,* at 1469–70 (concluding that Commissions' functions are primarily executive in nature). Thus, the court answers the first part of this two-pronged *Bowsher* analysis by classifying the functions of the Commission as primarily judicial in nature.

#### b. *Alleged Executive Expansion*

 The second inquiry for the court is whether the power of the executive branch has been impermissibly expanded because it "controls" the Commission through the President's appointment and removal powers over the commissioners. Defendants contend that the President's power to appoint commissioners with the advice and consent of the Senate, and his power to remove a commissioner for "good cause" violates separation of powers because it gives control over the judiciary to the executive.

As an initial matter, the court flatly rejects the argument that the President's appointment power violates the Constitution. The President works with the Judicial Conference of the United States as well as the Senate to select the judges/commissioners. In light of the constitutional power given to the President under the appointment clause, it is difficult to understand how this procedure violates separation of powers

principles. Additionally, even though the court concludes that the Commission is properly within the judicial branch, the President appoints these commissioners not as members of the Article III judiciary, but as individuals with recognized expertise in the area of sentencing. Thus, presidential appointment of these individuals could not in any way "control" the judiciary. *But see United States v. Arnold,* at 1472 (S.D. Cal.1988) ("Congress has involved the Judicial Branch in the selection of members to an ongoing executive commission," which creates excessive intermingling of the two branches).

It is the President's removal power to which defendants focus most of their argument as this power is more analogous to the situation in *Bowsher.* However, the court cannot agree with defendants that the circumscribed, "good cause" standard, power of removal entrusted with the President constitutes "control" of the individual judges/commissioners, much less the entire judiciary. First, the President's removal power extends only to the individuals as commissioners—they in no way relinquish their rights to lifetime tenure within their Article III capacities. Thus, removal of a commissioner does not equal removal of a federal judge. Second, the court finds that this "good cause" standard is sufficiently circumscribed so as to rule out the possibility of presidential removal of a commissioner for reasons stemming from a difference in policy views. On this point, the court concurs with the views expressed in *Ruiz–Villanueva* wherein it is stated that "[n]othing in the text of the Act or its legislative history suggests that the removal power was contemplated to provide anything more than a necessary personnel management strategy." *United States v. Ruiz–Villanueva,* at 1424.

However, the court notes that examination of the Commission under the two-part *Bowsher* analysis is not yet concluded. Assuming arguendo that defendants have shown theoretical or practical[7] "control"

---

7. In their reply brief, defendants point to "the reality that no one likes to be fired, especially for cause, and thus the Commission members

may be willing to bend to the President's will in order to avoid such action." Defendants' Reply to Government's Response to Motion to Invali-

by the executive over the Commission, the court still cannot find that this control violates separation of powers principles as laid down in the *Bowsher* decision. Under the defendants' interpretation of the *Bowsher* holding, the court is bound by the following analogy: "Since Congress cannot retain the power to remove the Comptroller General if he is performing executive functions, the President cannot retain the power to remove Commission members if they are performing judicial functions." Defendants' Reply to Government's Response to Motion to Invalidate the Sentencing Guidelines and Defendants' Response to the Sentencing Commission's Amicus Brief, 33. However, the court finds this analogy flawed, and the instant matter distinguishable from the *Bowsher* situation, because the court has already concluded that while sentencing is primarily a judicial function, it is not exclusively so. Thus, any purported control by the executive over this primarily judicial function does not constitute unconstitutional encroachment by the President over the courts.

### 4. Due Process

■■■ Defendants contend (1) that the Guidelines offend due process because they unduly restrict the availability of probation in violation of the statute; and (2) that the application of the criminal history guidelines offends due process because increments in the point scale for a defendant's prior record are based on past sentencing practices that the Guidelines specifically reject. The court having reviewed these issues finds that defendants' due process claims are without merit.

#### a. *Probation*

Contrary to defendants' contention, 28 U.S.C. § 994 does not direct that one guideline be promulgated for the determination of the kind of sentence to be imposed and a

second guideline be promulgated for its size or length. The language of section 994(a)(1)[8] subparagraphs (A) and (B) clearly describe the kinds of judicial determinations the Guidelines should cover rather than prescribing separate Guidelines for each issue. The mere fact that the reference in § 994(a)(1) to the determination of the kind of sentence precedes the reference to the determination of its length does not mean that the Guidelines for these determinations must be kept separate. In fact, the Senate report, in rejecting a parole Commission suggestion that it be retained to set the actual release date for prisoners, stated that doing so

> would draw an artificial line between imprisonment and probation, forcing the sentencing guidelines system and the judges to formulate sentencing policy that assumes that a term of imprisonment, no matter how brief, is necessarily a more stringent sentence than a term of probation with restrictive conditions and a heavy fine. Such an assumption would be a roadblock to the development of sensible comprehensive sentencing policy.

S.Rep. No. 98–225, 98th Cong., 1st Sess. 55 (1983), *reprinted in* 1984 U.S.Code Cong. and Admin.News 3182, 3238.

In addition, and contrary to defendants' claims, the Guidelines are also consistent with the directive to the Sentencing Commission that it "insure that the Guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the offender is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). The Sentencing Table (Sentencing Guidelines at 5.2), when read with the probation guidelines (§ 5B1.1), permits probation without a confinement condition as a Guidelines sentence

date the Sentencing Guidelines and Defendants' Response to the Sentencing Commission's Amicus Brief, 34.

**8.** Under 28 U.S.C. § 994(a)(1), the Commission is directed to promulgate "guidelines ... for use of a sentencing court in determining the sentence to be imposed in a criminal case, includ-

ing (A) a determination whether to impose a sentence to probation, a fine, or a term of imprisonment; (B) a determination as to the appropriate amount of a fine or the appropriate length of a term of probation or a term of imprisonment;"

\* \* \* \* \* \*

for the first six offense levels for a first offender, and permits probation with a confinement condition as a Guidelines sentence for four additional offense levels. When these Guidelines provisions are read together with the directive to the sentencing judge found in 18 U.S.C. § 3553(a) that he impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing, the result is that a first offender convicted of a non-serious offense will usually be sentenced to probation.

Furthermore, the defendants' statement that 28 U.S.C. § 994(d) and (e) require that the Guidelines recognize that a defendant's age, education, vocational skills, special mental and physical conditions, employment records, and family and community ties may call for a term of probation rather than imprisonment is a misreading of the statute and its legislative history. Under 28 U.S.C. § 994(e), the commission is directed to assure that the Guidelines reflect the general inappropriateness of considering the listed factors in recommending a term of imprisonment or the length of that term. *See* Sentencing Guidelines, Ch. 5, Part H; S.Rep. No. 98–225, 98th Cong., 1st Sess. 174–75 (1983), *reprinted in* 1984 U.S.Code Cong. and Admin.News 3358.

### b. *Criminal History Guidelines*

Defendants second due process contention is that the Guidelines are inconsistent with congressional intent because they permit a sentence to be increased based upon the length of the defendant's prior sentence.

Guideline § 4A1.1 provides that points will be added to the criminal defendant's criminal history based upon, among other things, the length of the prior sentence. The practical effect of this guideline is to subject the defendant to an enhanced penalty based upon his prior sentence. Such a consequence is not improper. *See Rummel v. Estelle*, 445 U.S. 263, 268, 100 S.Ct. 1133, 1136, 63 L.Ed.2d 382 (1980); *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). In addition, considering a criminal defendant's prior sentence in

determining the sentence for a subsequent offense is a reasonable method for calculating previous criminal history despite past disparities. *Cf. McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (rejecting argument that death penalty unconstitutional based on general disparities in death penalty sentences). Furthermore, Guideline § 4A1.3 provides for departure from the Guidelines if there is reliable information that Guideline § 4A1.1 does not accurately reflect the seriousness of past criminal conduct. The Guidelines on criminal history adequately seek to avoid unwarranted disparities. For the reasons stated, the court finds defendants' due process arguments without merit.

### 5. Staying Enforcement of the Guidelines

The defendants have asked the court to stay application of the Guidelines for the following reasons: (1) the Guidelines are unlawful because the General Accounting Office's ("GAO") report to Congress concerning the impact of the Guidelines was inadequate; and (2) the Sentencing Commissions' statement of reasons for the Guidelines was not submitted to Congress until June 19, 1987, and hence the Guidelines could not go into effect December 19, 1987.

The court disposes of these contentions adverse to the defendants by adopting the position of the court in *Chambless* wherein the court stated:

> [t]here is no dispute that the guidelines and the Commission's initial report were timely provided to Congress. It is also undisputed that the GAO report was submitted within 150 days of the submission of the guidelines. Under the statute, these submissions suffice to trigger the November 1, 1987, effective date. We express no opinion on the "adequacy" of the GAO report. The GAO reported to Congress as required; it is for Congress to decide if the report is "adequate".

*Chambless* at 802–03.

BILBY, Chief Judge.

Based on the foregoing,

IT IS ORDERED denying defendants' motion in the following consolidated cases:

CR 88–13 TUC RMB; CR 88–64 TUC RMB; CR 88–16 TUC RMB; CR 87–435 TUC RMB; CR 88–30 TUC RMB; CR 88–32 TUC RMB.

CARROLL, District Judge, concurring in part.

IT IS ORDERED denying defendants' motion in the following consolidated case: CR 87–5487M PHX EHC. I concur in the conclusions of the foregoing Order that the sentencing guidelines are constitutional. I find, however, with respect to CR 87–5487M PHX EHC that the issue is not ripe for decision.

MARQUEZ, District Judge.

IT IS ORDERED denying defendants' motion in the following consolidated cases: CR 88–36 TUC ACM; CR 87–420 TUC ACM; CR 88–90 TUC ACM; CR 87–433 TUC ACM; CR 88–88M TUC ACM.

ROSENBLATT, District Judge, dissenting in part.

IT IS ORDERED denying defendants' motion in the following consolidated case: CR 88–35 PHX PGR, to the extent that if appropriate the court would impose sentence in accordance with the sentencing guidelines, however, for reasons hereinafter set forth I dissent from the rationale of my colleagues.

BROOMFIELD, District Judge.

IT IS ORDERED denying defendants' motion in the following consolidated cases: CR 88–42 PHX RCB; CR 88–38 TUC RCB.

STRAND, District Judge.

IT IS ORDERED denying defendants' motion in the following consolidated case: CR 88–41 PHX RGS.

ROSENBLATT, District Judge, dissenting.

The Sentencing Guidelines are unconstitutional. Promulgated by the United States Sentencing Commission, an independent commission in the judicial branch, and pursuant to The Sentencing Reform Act of 1984, they violate the separation of powers doctrine. Also, in the enactment, Congress has improperly delegated its lawmaking powers to the Commission.

The Commission cannot constitutionally establish Sentencing Guidelines because it is an agency of the judicial branch and its work product is essentially the product of the judicial branch through its three Article III members. It is this considerable input which encourages reconciliation of the Guidelines to the constitution; to make fabric of whole cloth. The rationale for the separation of powers violation is well articulated in *United States vs. Arnold*, 678 F.Supp. 1463 (S.D.Cal.1988), and is adopted by this court.

The Sentencing Guidelines are unconstitutional because of excessive delegation to the Sentencing Commission. Whereas certain reasonable delegations of power are not forbidden, when, as here, the delegation is to the judicial branch based on some notion of shared responsibility the result of which locks in place existing sentencing practices and which serves as a substantive enactment by the one branch not answerable to the public through the imprimatur of the three Article III judges, the non-delegation doctrine must be reanalyzed.

The reasons for this conclusion are well stated by the defendants in the cases consolidated herein for the challenge motions and need not be repeated for the purpose of this dissent.

STAY

The adoption of the Guidelines has altered the sentencing process as it affects every one concerned, probation officers, other court personnel, counsel, the court, and most directly, the defendants. It is important as a matter of judicial efficiency and uniformity that the considerable efforts required are not impaired by differing requirements or parallel sentencings. Therefore, this Court in *United States v. Carranza*, CR 88–35 PHX PGR, if appropriate, and in all subsequent cases, will stay any order of invalidity. The Court will sentence under the Sentencing Guidelines and Temporary General Order # 166,

United States District Court for the District of Arizona, pending appellate review.