UNITED STATES of America

v.

**Warren D. HICKERNELL, Jr., Defendant.**

No. 88 Cr. 87 (CLB).

United States District Court, S.D. New York.

July 27, 1988.

---

Richard A. Stanley, Asst. U.S. Atty., White Plains, N.Y., for plaintiff.

Lester B. Adler, White Plains, N.Y., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On February 10, 1988, a two count felony information was filed in this Court against the defendant. Count One of the Information charged the defendant with mail fraud in violation of 18 U.S.C. § 1341, which provides for a maximum penalty of five years imprisonment and/or a $1,000.00 fine. Count Two charged the defendant with credit card fraud in violation of 18 U.S.C. § 1029(a)(2), which provides for a maximum penalty of ten years imprisonment and/or a $10,000.00 fine. On March 3, 1988, the defendant waived indictment by a grand jury and pled guilty before me to both counts in the felony information.

Since these crimes were committed after November 1, 1987, there is no dispute that the Sentencing Reform Act of 1984, codified at 28 U.S.C. Sections 991–98 (1987), ("the Act"), is applicable to each count. Under the Sentencing Guidelines ("the Guidelines") promulgated pursuant to the Act, the defendant is subject to a guideline range of 2 to 8 months. Based on my detailed review of his pre-sentence investigation report, I conclude that prior to the Guidelines, Mr. Hickernell, on the present record, would receive a fine and a non-custodial term of probation from most of the Judges of this Court. However a sentence at the low range of the Guidelines would not shock our judicial conscience.

Defendant now moves for an order declaring unconstitutional the Guidelines promulgated by the United States Sentencing Commission ("the Commission") pursuant to the Act, and also for an order declaring the Guidelines invalid as applied to his sentencing.

In considering the defendant's constitutional challenge to the Act, this Court must exercise caution and restraint, and give great deference to the work of the Legislative Branch. We cannot rashly declare acts of Congress unconstitutional. As Justice Holmes once explained:

"Although research has shown and practice has established the futility of the charge that it was a usurpation when this Court undertook to declare an Act of Congress unconstitutional, I suppose that we all agree that to do so is the greatest and most delicate duty that this Court is called upon to perform."

*Blodgett v. Holden,* 275 U.S. 142, 147, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1928). Justice Frankfurter delivered a similar message in his concurrence in *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 164, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951), when he demanded "due regard to the fact that this Court is not exercising a primary judgment but is sitting in judgment upon those who also have taken the oath to observe the Constitution and who have the responsibility for carrying on government."

■ The powers of a district court to declare an act of Congress unconstitutional must be exercised with even more restraint than that imposed upon the Supreme Court, the highest court in the land. In ruling upon the constitutionality of a statute, a lower court must consider the statutory language and its legislative history against the background of the presumption of constitutionality attached to legislative acts. Also, as a practical matter, the Court must in effect, read the tea leaves or activate its crystal ball in order to predict how the Supreme Court will decide the issue when it finally does so, as it has promised to do subsequent to October 1988. *United States v. Johnson,* 682 F.Supp. 1033 (W.D. Mo.1988), *cert. granted sub. nom., United States v. Mistretta,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920. Surely, the imposition of all federal sentences should not be deferred until the fall term. This act of soothsaying which this Court is now called

upon to perform has become more and more difficult in recent years as the Supreme Court appears to have evolved into a sort of Super-senate.

■ This Court has studied with great care the Supreme Court's recent opinion in *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), especially the brilliant dissent of Justice Scalia, and has concluded, based upon the majority opinion, that the same Supreme Court which decided *Morrison* will ultimately uphold the constitutionality of the Sentencing Reform Act and the Guidelines promulgated thereunder. The theory or theories by which this ultimate result will be reached are not so easy to ascertain from our limited psychic resources, but it probably does not matter except to academia.

The *Morrison* case involved a constitutional challenge to the so-called "independent counsel" established by the Ethics in Government Act of 1974. The Ethics in Government Act established a "Special Division" of the United States Court of Appeals for the District of Columbia, and granted that court wide-ranging authority, upon application of the Attorney General, to appoint an "independent counsel;" to define the scope of his prosecutorial duties; and to terminate his tenure under certain circumstances. The Court in *Morrison* upheld the Act, finding no violation of Article III or the principle of separation of powers.

The Court in *Morrison* concluded that the powers given the Special Division were not inherently incongruous to the judicial power, posed an insufficient threat of judicial intrusion into matters of the Executive Branch, and did not affect the ability of the judiciary to render an "impartial and independent adjudication" of cases, since the Act provided that the judges of the Special Division would not participate in any judicial proceedings involving the cases brought by the so-called independent counsel. *Id.* at ——, 108 S.Ct. at 2614.

Since the Supreme Court found no constitutional objection to an Article III Court appointing prosecutorial executive officers, defining the scope of their discretion, and terminating their tenure, this Court finds it inconceivable that the Justices could hold the Sentencing Reform Act unconstitutional by reason of the means by which the Guidelines were created.

The arguments supporting the constitutionality of the Act and Guidelines, are even more compelling than those available in *Morrison.* Through the establishment of the Sentencing Commission, Congress was attempting to find a practical remedy to problems it perceived in arbitrary sentencing. The statute specifically states that one of the purposes of the Commission is to "provide certainty and fairness in meeting the purpose of sentencing, [and to avoid] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct ..." *See* 28 U.S.C. § 991(b)(1)(B). In seeking a practical remedy, Congress logically sought the aid of judges, those with the most practical experience in sentencing. As the Third Circuit explained in *Matter of President's Commission on Organized Crime ("Scarfo"),* 783 F.2d 370, 377 (1986), in which they found the membership of Judge Irving R. Kaufman of this Circuit on an executive Commission investigating organized crime to be constitutional:

"We are not prepared to say that the Constitution prohibits the service of Article III judges on any and all extrajudicial governmental committees or commissions. In the field of judicial administration, for instance, judges possess special knowledge. To put aside that expertise when legislation is being considered would be wasteful and counter-productive. As noted earlier, the Constitution does not contemplate that the three branches of government shall exist in hermetically-sealed compartments, uncooperative with, and oblivious to the activities of others. The people of this country would be ill-served by such unrealistic dogma. The protection from abuse of power which the separation concept seeks to provide is not compromised by a necessary degree of cooperation between the three branches."

(citing *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977).). The Sentencing Commission undoubtedly benefited from the practical experience judges brought to the task of sentencing reform. Our Constitutional philosophy in this nation has now become essentially pragmatic; we are unwilling to reject an act of Congress which expresses the desire of the people simply because it might (and surely will in the case of the independent counsel) lead in the future to abuses of power of the sort so clearly described by Justice Scalia in *Morrison.* We think instead, that we will deal with the abuses when they occur; traditional legal arguments based on the slippery slope and the parade of horrors have now lost their force.

Applying the functional and pragmatic approach the Court took to the constitutional issue in *Morrison*, by considering whether the exercise of power under the Sentencing Reform Act negatively affects the proper functioning of the Judiciary or allows one branch to encroach upon the constitutional powers of the other branches, this Court concludes that the Act is constitutional.

The Court finds no practical or present threat to the constitutionally assigned function of the Judiciary through membership of three appellate judges on the Commission. The tasks to be performed by the judges on the Commission are clearly non-judicial in nature, and do not involve the exercise of Article III power to adjudicate cases and controversies. While it would be unheard of for an Article III Judge to reject the call of the President, at least in theory these three individual members of the judiciary serve voluntarily as commissioners and are empowered as such under the Act, rather than as an Article III Court. *See President's Com'n on Organized Crime* ("*Scarfo*"), 783 F.2d 370, 377 (3d Cir.1986) (historical list of extra-judicial activities of judges). Their removal from this office by the President under 28 U.S.C. § 991(a) would leave their judicial powers intact.

Since the individual judges may recuse themselves from cases involving the Sentencing Guidelines, a solution which was endorsed by the Supreme Court in *Morrison* —— U.S. at ——, 108 S.Ct. at 2614, *see also Scarfo*, 783 F.2d at 381, the participation of the three judges in the Sentencing Commission does not call into question the impartiality or independence of the judiciary. The recusal of these judges from a limited number of cases will not create a constitutionally-significant burden on the remaining members of the judiciary.

The Court concludes further that the Act does not permit the Judiciary to encroach upon powers constitutionally reserved to other branches. While in fact the statute labels the Commission as a judicial body, this is a misnomer. In reality its members are exercising non-judicial, administrative or legislative rule making powers derived solely from the statute, in formulating and promulgating sentencing guidelines. And as was noted earlier, individual judges, rather than a court, serve as members of the Commission, and exercise non-judicial functions. "The judges do not wear their robes in the Commission room," and therefore, their presence does not prevent the Commission from performing its executive or legislative function. *Scarfo*, 783 F.2d at 380 (quoting Judge Roney's concurrence in *Scaduto*, 763 F.2d 1191, 1204 (11th Cir. 1985)).

The defendant also challenges the Act as an unconstitutional delegation of the legislative power. The Court concludes that the delegation of authority by Congress through the Act to the Sentencing Commission to formulate and promulgate sentencing guidelines is constitutional. The Act outlines the policies which prompted the formation of the Commission, specifies the purposes and goals to be accomplished by the Commission, and contains specific directions to the Commission on how to carry on its work. *See* 28 U.S.C. Sec. 994(b) et seq. Since Congress has laid down an intelligible principle to which the Commission is directed to conform its work, there is no unconstitutional delegation of legislative power in this case. *See National Cable Television Ass'n. v. United States*, 415

U.S. 336, 342, 94 S.Ct. 1146, 1149, 39 L.Ed. 2d 370 (1974). The legislative body allowed the Guidelines to come into effect after a lying-over period by failing to reject them. This method of legislative enactment, at least in the area of difficult technical issues not amenable to resolution by parliamentary debate, has been approved in many contexts. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 15, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941); *Clark v. Valeo*, 559 F.2d 642, 648 (D.C.Cir.1977).

Defendant also challenges the Sentencing Guidelines as invalid under the Sentencing Reform Act of 1984 itself and as applied to him. The Court denies the motion on this ground. The Court has carefully reviewed the language of the statute and its legislative history, and compared it to the Guidelines, not only in the immediate context of this case, but also over the past few months, in preparing to use them in cases where the crime involves acts occurring after November 1, 1987, and concludes that the Guidelines are fully consistent with the Sentencing Act. On this point, the Court adopts the reasoning of Judge Mukasey in *United States v. Mendez*, 691 F.Supp. 656 (S.D.N.Y.1988).

The Court has considered all other points raised by defendant. Essentially they have been dealt with adequately in numerous other opinions upholding the sentencing guidelines. *See e.g., United States v. Etienne*, 87 Cr. 791 (E.D.N.Y. May 5, 1988) (Nickerson, J.) [available on WESTLAW, 1988 WL 49250]; *United States v. Macias–Pedroza*, 694 F.Supp. 1406 (D.Ariz.1988) (en banc); *United States v. Alves*, 688 F.Supp. 70 (D.Mass.1988); *United States v. Chambless*, 680 F.Supp. 793 (E.D.La.1988); *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988).

The motion is denied. A judgment of conviction imposing sentence consistent with the Sentencing Guidelines will be filed in this case. Execution will be stayed until ten (10) days following issuance of the mandate of the Court of Appeals in *United States v. Carlos Martinez*, 87 Cr. 1020 (KTD), unless the Court of Appeals shall direct otherwise.

SO ORDERED.